Steven S. Guy (#009106)
THE GUY LAW FIRM, P.L.L.C.
10105 E. Via Linda, Ste. 103
Scottsdale, Arizona 85258-5326
Telephone: 480.767.3175
Facsimile: 480.383.6874
E-Mail: steve@steveguylaw.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shane Mcgough, a single man,<br><br>  Plaintiff,<br><br>v.<br><br>Paul Penzone, in his official capacity as Sheriff of Maricopa County; Richard Eversole and Sarah Bell Eversole, husband and wife; Alden Jamaal Jackson, and Kristin L. Jackson, husband and wife; United States of America, a governmental entity; Kelly Marie Fleming and John Doe Fleming, husband and wife,<br><br>  Defendants. | No. 2:18-cv-01302-JAT-DMF<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

For his Amended Complaint against Defendants, Plaintiff Shane McGough ("Plaintiff"), by and through his undersigned attorney, alleges as follows:

**JURISDICTION**

1. Plaintiff brings this action pursuant to 42 U.S.C. §1983, *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 402 U.S. 388 (1971) ("*Bivens*), for violations of the Fourth and Fourteenth Amendments of the United States Constitution, and pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346 (b), and for additional pendent state common law claims as set forth herein.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because some of Plaintiff's claims arise under the Constitution and laws of the United States and the underlying events out of which this lawsuit arises occurred in the District of Arizona.

# PARTIES

3. Defendant Paul Penzone ("Sheriff Penzone") holds the position of Maricopa County Sheriff and employer of his deputies named herein.

4. Sheriff Penzone is named in his official capacity only, as the Sheriff of Maricopa County, Arizona. He is vicariously liable under the state law claims asserted herein for the conduct of his deputies while acting in the course and scope of their employment as such.

5. Defendants Shaun Richard Eversole ("Deputy Eversole") and Sarah Bell Eversole are a married couple residing in Maricopa County, Arizona. Deputy Eversole's acts, errors and omissions alleged herein were done for the benefit and furtherance of the Eversole marital community.

6. Defendants Alden Jamaal Jackson ("Deputy Jackson") and Kristin L. Jackson are a married couple residing in Maricopa County, Arizona. Deputy Jackson's acts, errors and omissions alleged herein were done for the benefit and furtherance of the Jackson marital community.

7. At all times pertinent hereto, Deputies Eversole and Jackson were agents and employees of Sheriff Penzone and the Maricopa County Sheriff's Office ("MCSO"). As such, they were duly sworn to uphold the Constitution of the United States of America and the Constitution of the State of Arizona, to obey the laws of the State and the United States, and the rules, regulations, and policies of the MCSO, to never abuse the authority vested in them, to uphold the constitutional rights to liberty, equality and justice afforded to all persons, to be honest in thought and deed, and to never misrepresent themselves, be untruthful, nor tolerate such conduct on the part of any other employees of the MCSO.

8. At all times pertinent hereto, Deputies Eversole and Jackson were acting in the course and scope of their employment with Sheriff Penzone and MCSO and under color of law.

9. Defendant Kelly Marie Fleming ("Officer Fleming") and John Doe Fleming are believed to be a married couple residing in Maricopa County, Arizona. Officer Fleming's acts, errors and omissions alleged herein were done for the benefit and furtherance of the Fleming marital community.

10. John Doe Fleming's true name is unknown to Plaintiff. As such, he is named herein fictitiously. When his identity is discovered, to the extent necessary, Plaintiff will seek leave to amend this complaint to identify him.

11. At all times pertinent hereto, Officer Fleming was an agent and employee of the United States Forest Service ("USFS"), a division of the United States Department of Agriculture. As such, she was duly sworn to support and defend the Constitution of the United States of America, to bear true faith and allegiance to the same, and to well and faithfully discharge her duties as a USFS law enforcement officer.

12. At all times pertinent hereto, Officer Fleming was acting in the course and scope of her employment with the United States of America and under color of law.

## COMMON FACTUAL ALLEGATIONS

### Events Leading to the Holding Cell Attack and Torture of Plaintiff

13. Plaintiff and three of his friends spent Saturday, July 15, 2017, enjoying a day of casual friendship and tubing on the Salt River in the Tonto National Forest. They had arrived early that day at the parking and tube rental concession. Being among the first to arrive, the driver of the group, parked his truck in the parking lot in a spot closest to the tube rental buildings and, after renting some tubes, the group were transported by bus to the upstream embarkment point. After several hours, the foursome paddled ashore at one of the designated stops, gathered their stuff and caught the bus back to the parking area.

14. While in the parking lot, Plaintiff and one of the group became embroiled in a verbal argument with a cab driver who was parked nearby who falsely claimed that the owner of the truck had damaged his cab while backing out of his parking spot.

15. The argument escalated in volume and the truck's owner walked away from

- 3 -

the scene.  After several minutes, MCSO Deputies, Michael S. Finney and David E. Crissinger, arrived at the scene.

16. Without permission, Deputy Finney opened the driver's side door of the truck in an apparent search of its interior.  At this point, Plaintiff believed that the truck owner's Fourth Amendment rights were being violated by an illegal search of the truck.  Plaintiff told Deputy Finney that he did not have permission to search the truck.  When Finney continued, Plaintiff reached his arm in between Finney and the open door of the truck while insisting that the attempted search was unlawful.  In doing so, Plaintiff did not physically touch or threaten Finney in any way.

17. Rather than explain what he was doing, Finney went on the offensive.  In his own words, he "immediately grabbed" Plaintiff and began to shove him several times in the chest while verbally taunting plaintiff.  Finney forcefully grabbed Plaintiff's throat around the Adam's apple, painfully restricting his airway while simultaneously pushing him back against the truck.  Out of fear and shock, and in self-defense, Plaintiff struck Deputy Finney, at which point, Deputy Crissinger jumped in to try to tackle Plaintiff.  In an unfortunate accident, all three persons went to the ground with Crissinger twisting and fracturing his leg.

18. Plaintiff was then held down, handcuffed, and forced to lay on the ground for lengthy time with his body and face pressed to the hot pavement.  Later, Plaintiff was placed in the back seat of Officer Fleming's patrol vehicle.

### **The Holding Cell Assault and Torture**

19. Officer Fleming drove Plaintiff to a nearby MCSO substation followed separately by Deputies Jackson and Eversole and a Malinois police dog, Sergeant Shadow.

20. Upon arriving at the substation, Officer Fleming and Deputies Eversole and Jackson approached the vehicle itching for an opportunity to extract vengeance for their injured fellow officer.  They were poised to fight as they opened the passenger door and aggressively ordered Plaintiff to step out of the vehicle.

21. Plaintiff was sitting passively in the back seat demanding an explanation of his arrest. Rather than respond to Plaintiff's inquiry and after a lapse of just a few seconds, Plaintiff was forcibly dragged by his handcuffs out of the vehicle by Deputy Jackson.

22. Plaintiff was then led by Jackson with one hand on Plaintiff's bicep, into the station and holding cell, with Fleming, Eversole and Shadow right behind. While Plaintiff was agitated and demanded an explanation for his arrest, he offered no resistance to being led into either the building or the holding cell inside the building.

23. While handcuffed and seated on the concrete bench in the holding cell, Deputy Jackson, who outweighed Plaintiff by at least 100 pounds, began to try to remove the handcuffs, but had difficulty with the key while Deputy Eversole stood close by with the canine, Shadow, barking menacingly at Plaintiff.

24. Jackson tossed one set of keys toward another unknown deputy who was standing in the doorway of the holding cell while Plaintiff continued to protest and question his arrest. Plaintiff did nothing even remotely suggestive of fighting. In fact, he sat on the bench for more than 30 seconds while Jackson continued to fumble with another set of handcuff keys.

25. In frustration from Jackson's actions, the dog's furious barking, and the deputies' refusal to answer his questions, Plaintiff attempted only to stand up, a non-aggressive movement that lasted only a second. In response, Jackson forcibly pushed Plaintiff back down to the bench. During that fleeting movement, despite that Plaintiff was cuffed, in a secure holding cell and surrounded by armed law enforcement officers, Deputy Eversole attempted to deploy Sergeant Shadow, who through training or instinct saw no threat and did not engage Plaintiff who immediately sat back down on the bench, head down, with his cuffed hands in his lap.

26. Seconds later, while Plaintiff was still seated on the bench with Jackson's massive body looming over him, Deputy Fleming assaulted Plaintiff with a forcible two-handed grab at his throat. Plaintiff then yelled at Fleming who responded with another

- 5 -

forcible two-handed jab to the throat. Again, Plaintiff did nothing in response except to verbally insult Officer Fleming. At that point, though Plaintiff was not fighting or resisting, Jackson yanked Plaintiff off the holding cell bench, pivoted and hurled Plaintiff to the back of the holding cell and forced him to the ground.

27. While Jackson was taking Plaintiff to the ground, Plaintiff again showed he would not resist, yelling, "I'll get on the ground." Despite Plaintiff's lack of resistance and despite that the much larger Jackson had complete control over Plaintiff, Deputy Eversole again deployed Sergeant Shadow and this time the dog obeyed. Shadow commenced a horrific and prolonged attack on Plaintiff while he was helplessly pinned to the ground by the massive Jackson, whose knee was squarely on Plaintiff's abdomen while he continued to try to remove the handcuffs. Throughout this attack Plaintiff continued to scream in agony that he was complying, that he had done nothing wrong, that he was in pain and repeatedly begged the deputies to call the dog off.

28. Neither Deputy Jackson, nor Officer Fleming or any of the other unknown deputies at the substation intervened or otherwise attempted to stop the vicious and prolonged canine attack instigated by Deputy Eversole. Instead, Deputy Jackson rolled Plaintiff over to his stomach to better expose Plaintiff's buttocks to the dog, who all the while was ripping and tearing at Plaintiff's flesh. Throughout the remainder of the relentless attack, Jackson was continuing to press Plaintiff's body and face to the hard-concrete floor of the cell. This continued for over three minutes while Jackson and other deputies were continuing to try to remove the handcuffs and Officer Fleming remained mute.

29. The canine, Shadow, ravaged Plaintiff's backside for more than three minutes before Eversole disengaged the dog after which the deputies continued their effort to remove the handcuffs with Plaintiff lying bloody and injured on the floor of the cell. The horrific torture of Plaintiff was captured on Eversole's and Jackson's Body Worn Cameras ("Body Cams").

**The False and Misleading Incident Reports**

30.     The Body Cam videos clearly and unambiguously show that the holding cell attack on Plaintiff was a criminal act by MCSO employees Eversole and Jackson, and U.S. Forest Service Officer Fleming.  However, that was not the end of the MCSO deputies' criminal activity.  Deputies Jackson and Eversole compounded their criminal conduct by filing false and misleading incident reports regarding the attack.

31.     A comparison of the Body Cam video evidence with the later prepared incident reports reveal that deputies Jackson and Eversole repeatedly lied in their official reports.

32.     Deputy Jackson lied when he claimed that Plaintiff physically resisted and tried to "prevent" the deputies from escorting him into the station and holding cell. Likewise, Deputy Eversole lied when he reported that Plaintiff was "actively attempting to pull away from" Jackson as Plaintiff was escorted into the building.  The Body Cam videos prove otherwise.

33.     Deputy Jackson lied again when he claimed that Plaintiff "displayed active aggression by standing up and lunging toward us as if he was attempting to engage in a fight" and that he was "attempting to use the handcuffs as a weapon."  Eversole tried to corroborate that lie by, saying "McGough made an overt movement off the bench and began to actively fight Deputy Jackson."  Again, the Body Cam videos prove otherwise.

34.     Deputy Jackson lied again when he said Plaintiff "attempted to lunge at us a second time before being pushed back onto the bench again" and that Plaintiff was "actively resisting the handcuffs being removed" and that he "kicked me [Jackson], Officer Fleming and Deputy Eversole as he flailed around on the concrete bench."  Again, the Body Cam videos prove otherwise.

35.     Likewise, though tellingly inconsistent with Jackson's report, Eversole lied when he reported that Plaintiff "continued to fight Deputy Jackson as well as kicking [only] Officer Fleming."  Again, the video shows otherwise.

36. Both Deputies lied about the reason that Deputy Jackson jerked Plaintiff off the bench. Both reported it was because of active fighting when in truth Plaintiff was not fighting and had merely insulted Officer Fleming after she assaulted him.

37. Deputy Eversole's report of the reason he engaged Sergeant Shadow is a particularly sinister lie designed to try to cover up his clear violation of MCSO use of force and canine policies. He said, "In order to stop the active aggression from McGough and prevent further injuries to law enforcement officer, I deployed Canine Shadow with a placement bite on the upper rear of McGough's right thigh." The video on the other hand demonstrates that the deployment of the dog was a vengeful and over the top use of force contrary to MCSO Policies CP-1 and GJ-25. Plaintiff was a handcuffed detainee, fully secured in a holding cell, he was being assaulted by Officer Fleming and was surrounded by a gang of armed law enforcement officers, including Officer Jackson who outweighed Plaintiff by at least 100 lbs. and had total control over Plaintiff.

38. Deputy Eversole's suggestion that Plaintiff was a threat to anyone in the holding cell and that the attack on Plaintiff was justified is an extreme and outrageous lie designed to mask his, Deputy Jackson's and Officer Fleming's criminal conduct.

39. In reliance upon the falsified reports by Jackson and Eversole, the State brought multiple felony assault charges against Plaintiff. Counts 3 and 4 of the criminal complaint alleged that Plaintiff committed Assault and Aggravated Assault on Deputy Jackson and Officer Fleming. Count 5 alleged that Plaintiff resisted arrest by using or threatening physical force against Jackson, Fleming and Eversole. These charges were false, malicious and without probable cause and were later dismissed. Jackson, Fleming and Eversole aided and abetted those false charges through their false reporting.

## COUNT ONE – BATTERY

(As to All Defendants)

40. The allegations of Paragraphs 1 through 39 of this Complaint are incorporated herein.

- 8 -

41.    Defendants' conduct as described herein constitutes the tort of battery. Such conduct was a violation of A.R.S. §§13-409 and 13-410 resulting in unreasonably offensive and injurious contact to Plaintiff committed without justification and with the intent to seriously harm and injure Plaintiff;

42.    As a direct and proximate cause of defendants' battery, Plaintiff has suffered serious bodily injury, pain, suffering, anguish, emotional distress and economic losses including hospital, and other medical expenses, and lost earnings, all in an amount to be proved in the trial in this matter.

**COUNT TWO – VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS – FOURTH AND FOURTEENTH AMENDMENT - PURSUANT TO 42 U.S.C. §1983**

(As to Defendants Eversole and Jackson)

43.    The allegations of Paragraphs 1 through 42 of this Complaint are incorporated herein.

44.    Deputies Eversole and Jackson are liable to Plaintiff pursuant to 42 U.S.C. §1983 for violating Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

45.    As a direct and proximate cause of Deputies Eversole and Jackson's intentional, willful and/or reckless disregard of Plaintiff's constitutional rights, Plaintiff has suffered serious bodily injury, pain, suffering, anguish, emotional distress and economic losses including hospital, and other medical expenses, and lost earnings, all in an amount to be proved in the trial in this matter.

46.    The above acts were committed intentionally, willfully, and/or recklessly and with an "evil mind" and with a conscious disregard of Plaintiff's rights and interests. Accordingly, Pursuant to 42 U.S.C. §1983, Plaintiff is entitled to an award of punitive damages against these individually named defendants.

47.    Plaintiff is also entitled to an award of costs, attorney's fees and expert witness fees Pursuant to 42 U.S.C. §§1983 and 1988.

# COUNT THREE – VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS – FOURTH AND FOURTEENTH AMENDMENT - PURSUANT TO BIVENS

(As to Defendant Fleming)

48. The allegations of Paragraphs 1 through 47 of this Complaint are incorporated herein.

49. Officer Fleming is liable to Plaintiff pursuant to *Bivens* for violating Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

50. As a direct and proximate cause of Officer Fleming's intentional, willful and/or reckless disregard of Plaintiff's constitutional rights, Plaintiff has suffered serious bodily injury, pain, suffering, anguish, emotional distress and economic losses including hospital, and other medical expenses, and lost earnings, all in an amount to be proved in the trial in this matter.

51. The above acts were committed intentionally, willfully, and/or recklessly and with an "evil mind" and with a conscious disregard of Plaintiff's rights and interests. Accordingly, Pursuant *Bivens*, Plaintiff is entitled to an award of punitive damages against Officer Fleming.

52. Plaintiff is also entitled to an award of costs, attorney's fees and expert witness fees Pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §2412.

# COUNT FOUR – RECKLESS OR NEGLIGENT CONDUCT

(As to all Defendants)

53. The allegations of Paragraphs 1 through 52 of this Complaint are incorporated herein.

54. Defendants owed a duty of reasonable care to Plaintiff, a pretrial detainee, in their detention of him. Such duty included the duty to refrain from the use of excessive force and keep Plaintiff safe while in their custody and to intervene and protect Plaintiff from risks of harm presented by overzealous law enforcement officers.

55. The harm caused by defendants, including Deputies Eversole and Jackson and Officer Fleming, was foreseeable.

56. At all times pertinent hereto, Deputies Eversole and Jackson were reckless or negligent in their detention of Plaintiff and their excessive use of physical and potentially deadly force against Plaintiff. Defendant Penzone is vicariously liable for the actions and inactions of Deputies Eversole and Jackson.

57. At all times pertinent hereto, Officer Fleming was reckless or negligent in her detention of Plaintiff and use force and in failing to intervene and/or curtail the use of potentially deadly force against Plaintiff. Defendant United States of America is vicariously liable for the actions and inaction of Officer Fleming.

58. As a direct and proximate cause of Deputies Eversole and Jackson and Officer Fleming's recklessness or negligence, Plaintiff suffered serious bodily injury, pain, suffering, anguish, emotional distress and incurred and will likely continue to incur economic losses including hospital, and other medical expenses, and lost earnings, all in an amount to be proved in the trial in this matter.

59. Plaintiff hereby requests and demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs request that judgment be entered against defendants and, where applicable, against their marital communities, as follows:

A. Awarding Plaintiff's special and general damages against all defendants in an amount to be proved at trial;

B. Awarding punitive damages against Deputy Eversole and Sarah Bell Eversole and against Deputy Jackson and Kristin L. Jackson and their respective marital communities pursuant to 42 U.S.C. §1983;

C. Awarding Punitive damages against Officer Fleming and John Doe Fleming and their marital community pursuant to *Bivens* in an amount to be proved at trial;

D. Awarding Plaintiff's taxable costs, expert witness fees, and attorneys' fees against Deputy Eversole and Sarah Bell Eversole and against Deputy Jackson and Kristin

L. Jackson and their respective marital communities pursuant to 42 U.S.C. §§1983 and 1988;

    E.    Awarding Plaintiff's taxable costs, expert witness fees, and attorneys' fees against Officer Fleming and John Doe Fleming and their marital community pursuant to *Bivens,* 42 U.S.C. §1988 and 28 U.S.C. §2412.

    F.    For such other and further relief as the Court deems just and proper.

DATED this 6th day of June 2018.

THE GUY LAW FIRM, LLP

*/s/ Steven S. Guy*
Steven S. Guy, Esq.
10105 E. Via Linda, Ste. 103
Scottsdale, AZ 85260
(480) 767-3175

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the CM/ECF registrants.

Judge James A. Teilborg
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 523
401 West Washington Street, SPC 51

Magistrate Deborah M. Fine
United States District Court
123 N. San Francisco Street, Suite 200
Flagstaff, AZ 86001

Ann Thompson Uglietta, Esq.
Maxine S. Mak, Esq.
Maricopa County Attorney's Office
Civil Rights Division
Security Center Building

222 North Central Avenue, Suite 1100
Phoenix, AZ 85004
*Attorneys for Defendants Penzone, Eversole and Jackson*


 /s/ Steven S. Guy_____