**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Shane McGough,<br><br>                    Plaintiff,<br><br>v.<br><br>Paul Penzone, et. al.,<br><br>                    Defendants. | No. 2:18-cv-01302-DJH-DMF<br><br><br>**JOINT PROPOSED FINAL<br>PRETRIAL ORDER** |

     Following is the Joint Proposed Final Pretrial Order to be considered at the Final Pretrial Conference in this case set for April 27, 2021 at 10:30 a.m. in Courtroom 605, Sandra Day O'Connor U.S. Courthouse, 401 West Washington, Street, Phoenix, Arizona 85003. The attorneys who are responsible for the trial shall attend the Final Pretrial Conference.

     A. **Trial Counsel for the Parties.**

     ***Trial Counsel for Plaintiff***
     Steven S. Guy, Esq. (steve@steveguylaw.com)
     The Guy Law Firm, PLLC
     10105 E. Via Linda, Ste. 103
     Scottsdale, AZ 85258
     (480) 767-3175 (Direct)
     (480) 383-6874 (Fax)

     David S. Shughart, Esq. (dshughart@bmsslaw.com)
     Beale, Micheaels, Slack & Shughart, P.C.
     7012 N. 18th Street
     Phoenix, AZ 85020
     (602) 957-0516 (Direct)
     (602) 285-1516 (Fax)

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

1

2

***Trial Counsel for Defendant Penzone***
Ann Thompson Uglietta (uglietta@mcao.maricopa.gov)
Maxine S. Mak (makm@mcao.maricopa.gov)
Maricopa County Attorney's Office
Civil Services Division
Security Center Building
225 West Madison Street
Phoenix, AZ 85003
(602) 506-8541 (Main)
(602) 506-8567 (Fax)

3

4

5

6

7

***Trial Counsel for Defendant Eversole***
Daniel P. Struck (dstruck@strucklove.com)
Jacob B. Lee (jlee@strucklove.com)
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
(480) 420-1600 (Main)
(480) 420-1696 (Fax)

8

9

10

11   **B**. **Statement of Jurisdiction**.

12   This Court has jurisdiction over the Plaintiff's federal civil rights claims pursuant to

13   28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. §1983 because some of Plaintiff's claims

14   arise under the Constitution and laws of the United States.  This Court has supplemental

15   jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because the

16   state law claims are so closely related to the Plaintiff's federal claims as to form part of the

17   same case and controversy.  The acts and the underlying events out of which this lawsuit

18   arises occurred in Maricopa County, in the State of Arizona.  Thus, venue is proper in the

19   District of Arizona pursuant to 28 U.S.C. §1391(b).

20   **C**. **Nature of the Case**.

21   ***Plaintiff's Description***

22   This is an excessive force, battery and civil rights case by Plaintiff Shane McGough

23   against Maricopa County Sheriff's Deputy Shaun Eversole and Sheriff Paul Penzone (for

24   his alleged vicarious liability only on the state law claims described below).   On July 15,

25   2017, Plaintiff became involved in an altercation with other Sheriff's deputies and was

26   arrested and transported to an MCSO substation located near the Salt River in the Tonto

27   National Forest.  Plaintiff alleges that while he was handcuffed and seated on a concrete

28   holding cell bench, Deputy Alden Jackson hurled him to the floor of the cell and Deputy

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

Eversole deployed his canine, Sergeant Shadow. At Defendant Eversole's direction, Shadow was allowed to continuously bite Plaintiff for over three minutes on the upper thigh. Throughout the canine attack, Plaintiff was attempting to comply with the deputies' commands while being subjected to agonizing pain and torture. Plaintiff alleges he sustained serious injury in the canine attack and was transported to the hospital for treatment. Since the attack, Plaintiff continues to experience symptoms of post-traumatic stress disorder, numbness, tingling and has deep scarring in the bite area.

Plaintiff alleges state law claims of battery and excessive force against Deputy Eversole and that Sheriff Penzone is vicariously liable under his Plaintiff's state law claims. Plaintiff further alleges that Deputy Eversole is liable for violation of Plaintiff's civil rights under 42 U.S.C. §1983 for violations of the Fourth Amendment of the United States Constitution. Plaintiff seeks compensatory damages under his state law claims and compensatory and punitive damages, costs and attorneys' fees under his §1983 claim.

### ***Defendants' Description***

On July 15, 2017, Plaintiff, Shane McGough, spent the day drinking with his friends on the Salt River. As they were attempting to leave the Salt River Recreation Area, Plaintiff's friend, who was driving, struck another vehicle, and an argument ensued. When MCSO deputies arrived, the driver fled. As deputies attempted to ascertain his identity, Plaintiff inserted himself between a deputy and a handgun in the map pocket of the truck door and began fighting with the deputy. Plaintiff, a collegiate wrestler, was able to overpower two deputies, both of whom were larger than him, and caused serious injuries to one of them—specifically, a broken leg, three broken ribs, and ligament injuries to both hands that required multiple surgeries. Other deputies arrived to the scene, but Plaintiff continued to resist lawful commands and to struggle against deputies at every opportunity.

During the short drive from the Salt River Recreation Area to the MCSO substation, Plaintiff was able to move his restrained hands from behind him to in front of him, a well-recognized sign that he intended to, and would be able to, continue fighting and resisting.

*The Guy Law Firm, P.L.L.C.*
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

- 3 -

Plaintiff continued to resist deputies as they escorted him into the cell, despite several warnings that if he fought, he would be bitten by Shadow, Deputy Eversole's police canine. In the cell, Plaintiff lunged up at Deputy Jackson and attempted to strike him as Deputy Jackson tried to remove Plaintiff's restraints, and kicked at USFS Officer Fleming several times. After being taken to the ground by Deputy Jackson, Plaintiff continued to resist, prompting Deputy Eversole to place Shadow in a controlled placement bite on Plaintiff's upper thigh. Shadow remained on-bite as Plaintiff continued to resist and kick at deputies. Once Plaintiff was under control, and with agreement from Deputy Jackson, Deputy Eversole removed Shadow from the bite. Defendants deny all liability. The force used by Deputy Eversole was reasonable and appropriate under the circumstances, and neither violated Plaintiff's constitutional rights nor constituted a battery. Defendants deny that Plaintiff is entitled to any of the relief he seeks.

**D. Stipulations and Undisputed Facts and Law.**

**1. The following material facts are admitted by the parties and require no proof:**

a. At all times relevant, Deputy Eversole was an employee of Sheriff Penzone in his official capacity and was acting in the course and scope of such employment. As such, if Deputy Eversole is found liable on Plaintiff's state-law battery claim, Sheriff Penzone is vicariously liable for Deputy Eversole's conduct.

**2. The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:**

a. None.

**3. The following issues of law are uncontested and stipulated to by the parties:**

a. Plaintiff fully complied with the Notice of Claim requirement of A.R.S. §12-821.01.

b. At the time of the events in the MCSO holding cell, Deputy Eversole acted under color of law.

**E. Contested Issues of Fact and Law.**

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

**1. The following are the material issues of fact to be tried and decided:**

**a. Whether Deputy Eversole's use of force in the holding cell was objectively reasonable under all of the circumstances.**

### _Plaintiff's Contention_

Deputy Eversole's use of force was objectively unreasonable.  In this regard, the most important *Graham* factor is "whether the suspect poses an immediate threat to the safety of the officers or others."  Further,  a "simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."  *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir. 2011), quoting *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001).  This most important factor clearly weighs heavily against defendants.  At the time that the K-9 was deployed it is obvious that Plaintiff posed no threat to any of the law enforcement officers in that jail cell.  He was unarmed, contained in a jail cell, handcuffed, wearing only a bathing suit, surrounded by at least three armed law enforcement officers while others were coming in and out of the cell and milling around just outside the cell door.  And, though Eversole had been told Plaintiff was a "fighter" at the scene of the initial arrest, and though Plaintiff was verbally belligerent and profane in the cell, he was not fighting with the officers when the dog was deployed or at any other time in the cell.  Eversole's and the other officer's assertions to the contrary are demonstrably false based on the video evidence.  Indeed, even MCSO's own internal affairs investigators who reviewed and summarized the videos of the events did not characterize anything they saw on the three holding cell videos as constituting "fighting" with or "lunging" at the law enforcement officers in the holding cell.  Further, Defendants' characterizations of what occurred while Plaintiff was escorted into the station and while Plaintiff was in the holding cell are contradicted by the video evidence and by statements made by longtime MCSO posse member Robert Buckley who gave a statement stating Plaintiff was somewhat quiet and was not fighting or resisting as he was being brought into the station and cell.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

At the time the K9 was deployed, there was nothing that required a so-called "split second" decision as argued by Deputy Eversole.   Deputy Jackson clearly and obviously jerked Plaintiff off of the bench.  He did so in response to crude verbal insults, not because he perceived Plaintiff to be fighting.  And immediately after he was pulled from the bench, Plaintiff loudly announced, "I'll get on the ground."  When the K9 was deployed and throughout its deployment, Deputy Jackson was exercising complete and dominant control over Plaintiff and all of Plaintiff's movements on the ground were direct, reflexive and defensive responses to the painful dog bites, not indicative of any kind of aggression or fighting.

Another factor in the use of force analysis is the relationship of the need for the use of force compared to the severity of the force used.   For the reasons stated above, no force was needed at the time the K-9 was deployed.  Plaintiff was handcuffed in a jail cell.  The officers involved were removing his restraints and if Plaintiff's actions inhibited their removal, they could easily have just left him alone in the cell until he calmed down.  But even if some minimal force was needed in order to remove Plaintiff's handcuffs, it was clearly enough that Jackson had Plaintiff pinned to the ground under complete control.

On this proportionality issue, defendants argue that the amount of force was "moderate at most."  But, contrary to the Defendants' contention, the court has already found that the type and amount of force used was significant.  [Doc. 136 at p. 15].

Further, regardless of the severity of the crime that occurred at the recreation center parking lot, the events in the holding cell were removed in time and in space from the alleged commission of that crime and Defendant Eversole had almost no knowledge of what had occurred earlier.   Facts unknown to Eversole regarding what occurred at the parking lot are irrelevant and not probative of any threat supposedly posed by Plaintiff while in the holding cell.  The circumstances from Eversole's standpoint must be based solely on what he knew and what he reasonably observed at the time of his use of force.

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

Plaintiffs contentions are set forth more fully in Plaintiff's Response in Opposition to Defendants Motion for Summary Judgment ("MSJ Resp.")[Doc. 126].

### *Defendants' Contention*

A use of force during an arrest must be "objectively reasonable" under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must take into account "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97. Analyzing these factors, Deputy Eversole's use of force was objectively reasonable.

First, the type and amount of force inflicted was moderate at most, and Plaintiff's injuries were minimal under the circumstances. Although the length of the bite was significant, Deputy Eversole placed Shadow carefully, and Shadow appears to have re-adjusted only once, an act necessitated by Plaintiff's own actions. Moreover, Deputy Eversole's use of the tactical out procedure ensured that Plaintiff suffered only puncture wounds, as opposed to tearing damage that potentially could have resulted. Plaintiff claims only some scarring, but no loss of function, and claims only some brief follow-up wound care and a few mental health appointments.

Second, Plaintiff's crime was severe, and his actions posed an immediate threat to the safety of Deputy Eversole and the others. After punching Deputy Finney in the face, throwing an elbow into Deputy Crissinger's face, and leaving Deputy Crissinger with extensive injuries to his hands that will leave him unable to return to field duty, as well as several broken bones, Plaintiff continued to refuse to follow lawful orders, moved his restrained hands from behind him to in front of him, attempted to pull away from Deputy Jackson while being escorted into the cell, lunged at Deputy Jackson and attempted to strike him, and kicked at the deputies and Officer Fleming. All of this, despite the fact that Deputy

Eversole warned Plaintiff several times he would be bitten if he fought. Even after Shadow was deployed, Plaintiff kicked Deputy Eversole several times.

Third, there can be no dispute that Plaintiff was actively resisting arrest. Considering all of the circumstances from the perspective of a reasonable officer on the scene, as the jury must, Deputy Eversole's use of force was objectively reasonable. (*See also* Doc. 102, 132.)

### b. Whether Deputy Eversole intended to, and in fact did, cause a harmful or offensive contact with Plaintiff.

#### *Plaintiff's Contention*

Deputy Eversole has admitted that he intentionally deployed his K9 on Shane McGough.  He has admitted that he did so with the intention of causing Plaintiff pain.  In his internal affairs interview, he called deployment of his K9 a  "pain compliance" tool.  He deployed the dog on a barely dressed man who was handcuffed and being held down.  He could hear Plaintiff screaming in obvious pain.  He could see Plaintiff's reactions in response to the pain that was being inflicted.  He clearly knew that his K9 was inflicting injuries and that injuries from his K9s lengthy sustained and repetitive biting, releasing, and reengaging were absolutely certain to occur.  He had no reasonable justification for deploying the K9 and he kept the K9 on its bite for over three minutes, knowing it was causing pain and harmful injuries.  His conduct clearly constitutes an actionable battery.

#### *Defendants' Contention*

To establish a battery, Plaintiff must prove that Deputy Eversole "intended to cause harmful or offensive contact" with him. *Ryan v. Napier*, 245 Ariz. 54, 59 (2018). It is not enough that Deputy Eversole performed intentional acts; he must have "desire[d] to cause [the] consequences of his act, or . . . believe[d] that the consequences [were] substantially certain to result from it." *Id*. (quoting Restatement (Second) of Torts § 8A, cmt. a & b).

Deputy Eversole deployed Shadow using a placement bite after Plaintiff had just lunged twice at Officer Fleming when he appeared to Deputy Eversole to come off the bench in an aggressive manner towards Deputy Jackson. Deputy Eversole did so based on

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

(1) his knowledge of the incident at Salt River Recreation; (2) the level of agitation and aggression he personally observed in Plaintiff during his interactions with Plaintiff up to that point; and (3) Plaintiff's apparent attempt to physically attack Deputy Jackson. He kept Shadow on-bite because the situation was not under control, such that the use of force could not safely be removed. Deputy Eversole's sole concern was Plaintiff's compliance with law enforcement directives and demonstrated ability and inclination to assault law enforcement officers. He was not trying to inflict pain, frighten Plaintiff, make him submit through pain, or punish him, and he released Shadow as soon as he determined it was safe to do so. Because Plaintiff was "attempting to commit, committing [and] [had attempted to flee] after having committed . . . a felony criminal act," (i.e., aggravated assault on Deputies Crissinger, Finney, Jackson, and Eversole and Officer Fleming), Deputy Eversole is presumed to have been acting reasonably in using force to protect himself or others and/or to effect Plaintiff's arrest. *See* A.R.S. § 12-716(A)(1). (*See also* Doc. 102, 132.)

> **c. Whether a reasonable person in Deputy Eversole's situation would have believed that the use of force was immediately necessary to protect himself against Plaintiff's use or attempted use of physical force, and whether Deputy Eversole used more physical force than would have appeared necessary to a reasonable person in that situation.**

### *Plaintiff's Contention*

For the same reasons discussed in Plaintiff's Contention as to subsection a. above, there is no legal justification for Eversole's use of force in the first place or for the duration and severity of his use of force.  Nor could he have reasonably believed under the circumstances that his conduct was lawful.  See also, MSJ Resp. [Doc. 126].

### *Defendants' Contention*

A.R.S. § 13-404(A) provides that physical force is justified "when and to the extent a reasonable person would believe that [it] is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force." As set forth above, Plaintiff had demonstrated an ability and intent to harm uniformed law enforcement officers. His continued refusal to obey lawful orders, maneuvering of his hands into a fighting

position, attempts to pull away from Deputy Jackson during his escort into the cell, lunges at Deputy Jackson and others, and kicks at Deputy Jackson, Deputy Eversole, and Officer Fleming support a finding that a reasonable person would have believed that force was necessary for Deputy Eversole to protect himself. Deputy Eversole deployed Shadow based on (1) his knowledge of the incident at Salt River Recreation; (2) the level of agitation and aggression he personally observed in Plaintiff during his interactions with Plaintiff up to that point; and (3) Plaintiff's apparent attempt to physically attack Deputy Jackson. He kept Shadow on-bite because the situation was not under control, such that the use of force could not safely be removed. Deputy Eversole's sole concern was Plaintiff's compliance with law enforcement directives and demonstrated ability and inclination to assault law enforcement officers. He was not trying to inflict pain, frighten Plaintiff, make him submit through pain, or punish him, and he released Shadow as soon as he determined it was safe to do so. (*See also* Doc. 102, 132.)

> **d. Whether a reasonable person in Deputy Eversole's situation would have believed that physical force was immediately necessary to protect another against Plaintiff's use or attempted use of physical force, and whether Deputy Eversole used more physical force than would have appeared necessary to a reasonable person in that situation.**

### *Plaintiff's Contention*

For the same reasons discussed in Plaintiff's Contention as to subsection a. above, there is no legal justification for Eversole's use of force in the first place or for the duration of his use of force.  Nor could he have reasonably believed under the circumstances that his conduct was lawful.   See also, MSJ Resp. [Doc. 126].

### *Defendants' Contention*

A.R.S. § 13-406 provides that physical force is justified "to protect a third person if, under the circumstances as a reasonable person would believe them to be, such person would be justified under § 13-404 … in threatening or using physical force … to protect himself against the unlawful physical force … a reasonable person would believe is threatening the third person he seeks to protect." As set forth above, Plaintiff had

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

demonstrated an ability and intent to harm uniformed law enforcement officers. His continued refusal to obey lawful orders, maneuvering of his hands into a fighting position, attempts to pull away from Deputy Jackson during his escort into the cell, lunges at Deputy Jackson and others, and kicks at Deputy Jackson, Deputy Eversole, and Officer Fleming support a finding that a reasonable person would have believed that force was necessary for Deputy Eversole to protect Deputy Jackson and Officer Fleming. Deputy Eversole deployed Shadow based on (1) his knowledge of the incident at Salt River Recreation; (2) the level of agitation and aggression he personally observed in Plaintiff during his interactions with Plaintiff up to that point; and (3) Plaintiff's apparent attempt to physically attack Deputy Jackson. He kept Shadow on-bite because the situation was not under control, such that the use of force could not safely be removed. Deputy Eversole's sole concern was Plaintiff's compliance with law enforcement directives and demonstrated ability and inclination to assault law enforcement officers. He was not trying to inflict pain, frighten Plaintiff, make him submit through pain, or punish him, and he released Shadow as soon as he determined it was safe to do so. (*See also* Doc. 102, 132.)

      **e.  Whether a reasonable person would have believed the force used by Deputy Eversole was immediately necessary to arrest or detain Plaintiff; whether Deputy Eversole made known the purpose or the arrest or detention if it was not otherwise known and reasonable to do so; and whether a reasonable person would believe the arrest or detention of Plaintiff to be lawful.**

### ***Plaintiff's Contention***

For the same reasons discussed in Plaintiff's Contention as to subsection a. above, there is no legal justification for Eversole's use of force in the first place or for the duration of his use of force.  Eversole was not making an arrest or detaining Plaintiff when he deployed his K-9.  Plaintiff had already been arrested, detained and confined to a jail cell.  Nor could he have reasonably believed that deploying a police K-9 on an unarmed, contained, restrained and well controlled pre-trial detainee for over three minutes was "immediately necessary to effect [his] arrest or detention or to prevent [his] escape."   Nor

could he have reasonably believed under the circumstances that his conduct was lawful. See also, MSJ Resp. [Doc. 126].

### *Defendants' Contention*

"[A.R.S. §] 13-409 provides a justification defense for law enforcement officers who use physical force[.]" *Ryan*, 245 Ariz. at 62. As set forth above, Plaintiff had demonstrated an ability and intent to harm uniformed law enforcement officers. His continued refusal to obey lawful orders, maneuvering of his hands into a fighting position, attempts to pull away from Deputy Jackson during his escort into the cell, lunges at Deputy Jackson and others, and kicks at Deputy Jackson, Deputy Eversole, and Officer Fleming support a finding that a reasonable person would have believed that force was necessary to arrest or detain Plaintiff. Plaintiff was well aware of the reason for his arrest, as he had just assaulted two uniformed deputies at the Salt River Recreation Area, one of whom suffered several broken bones and required transport from the scene in an ambulance. It was therefore reasonable for Deputy Eversole to believe that Plaintiff was aware of the purpose of the arrest or detention even if he did not personally explain it to him. Indeed, Deputy Hossack had informed Plaintiff of the reason for his arrest and detention, and a reasonable person would believe the arrest and detention to be lawful under the circumstances. Deputy Eversole did, however, give Plaintiff several warnings during the escort from Officer Fleming's vehicle into the cell that he would be bitten if he fought—warnings Plaintiff ignored. Deputy Eversole's use of force was therefore justified. (*See also* Doc. 102, 132.)

> **f.   Whether Plaintiff suffered any physical or emotional injuries as a result of Deputy Eversole's actions or omissions, and if so, the extent of any such injuries.**

### *Plaintiff's Contention*

Plaintiff suffered multiple deep puncture wounds and lacerations from Shadow biting him. His injuries required follow up wound care and prophylactic antibiotic medication to prevent possible infection from the dog bites. The dog bites have left Plaintiff with numbness and deep and discolored permanent scars on his upper thigh area.

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

Plaintiff also received counseling from a mental health therapist for emotional distress.   The Court has already found that these injuries are significant.

> It is undisputed that Shadow bit Plaintiff's leg for more than three minutes. In addition, Defendants do not dispute that Plaintiff suffered serious injuries to his leg as a result of the dog bite. Defendants nonetheless characterize the type and amount of force inflicted "as moderate at most." (Doc. 102 at 12). The Court disagrees, and has no trouble finding that the type and amount of force used was significant. Intermediate or significant force is "capable of inflicting significant pain and causing serious injury." *Young v. Cnty. of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011) ("while less severe than deadly force, [intermediate force] nonetheless present[s] a significant intrusion upon an individual's liberty interests"). Plaintiff's injuries, which included multiple deep puncture wounds and lacerations, are much more akin to the "severe" injuries suffered by the plaintiffs in *Smith*, *Chew*, and *Miller*, and differ in kind and extent from the "moderate" injury sustained by the plaintiff in *Lowry*, when a police dog briefly bit the plaintiff's lip.

[Doc 136 at p. 15].

### *Defendants' Contention*

Plaintiff suffered only minimal injuries as a result of Deputy Eversole's actions. Deputy Eversole's use of the placement bite and tactical out procedures ensured that Plaintiff suffered only puncture wounds, as opposed to tearing damage that potentially could have resulted. Plaintiff claims only some scarring, but no loss of function, and claims only some brief follow-up wound care and a few mental health appointments. His post-incident actions belie any claims of continued injury, whether physical or emotional.

The Court's characterization of Defendants' arguments as not disputing that Plaintiff suffered serious injuries as a result of the bite is, respectfully, incorrect. Defendants argued that "the type and amount of force inflicted was moderate at most"; that Plaintiff "suffered only puncture wounds, as opposed to tearing damage that potentially could have resulted" due to Deputy Eversole's use of the tactical out procedure; that the physical injuries Plaintiff sustained were less than those sustained by the suspects in *Miller v. Clark Cty.*, 340 F.3d 959, 961 (9th Cir. 2003), *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994), and *Smith v. Hemet*, 394 F.3d 689, 701-02 (9th Cir. 2005); and that "[c]onsidering the length of the bite,

Plaintiff's injuries are minimal," consisting only of "some scarring, but no loss of function." (Doc. 102 at 12–13, Doc. 132 at 10.) In any event, the Court's statements that "the type and amount of force used was significant" and "Plaintiff's injuries, which included multiple deep puncture wounds and lacerations, are much more akin to the 'severe' injuries suffered by the plaintiffs in *Smith*, *Chew*, and *Miller*," were made in the context of ruling on a motion for summary judgment, in which the Court was required to draw reasonable inferences in Plaintiff's favor as the non-moving party. It will be for the jury to decide the severity of Plaintiff's injuries at trial.

> **g. Whether Deputy Eversole acted pursuant to a legitimate law enforcement purpose or with ill will or spite or for the purpose of injuring Plaintiff, in complete indifference to Plaintiff's safety or rights, or in spite of a perceived risk that his actions would violate Plaintiff's rights.**

### *Plaintiff's Contention*

Punitive damages are recoverable under Plaintiff's §1983 claims against Eversole. *Smith v. Wade,* 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).  Under Arizona law, punitive damages may be awarded where the defendant's conduct evinces an "evil mind." *Rawlings v. Apodaca*, 726 P.2d 565 (Ariz. 1986); *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675 (Ariz. 1986). An "evil mind" may be shown by evidence that defendant pursued a course of conduct knowing that it created a substantial risk of significant harm to others. *Rawlings v. Apodaca*, 726 P.2d 565, 577-78 (Ariz. 1986).

Eversole engaged in egregiously excessive force against Plaintiff knowing that Plaintiff was in tremendous fear and pain and resulting in serious injury.  Given the severity and duration of the attack and the lack of any reasonable justification for it, a jury could easily determine that Eversole deployed the dog as an act of vengeance because of the injury to Crissinger and/or the insult to Officer Fleming.  His conduct amounted to torture within the meaning of the United Nations  Human Rights Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.  *See* footnote.  His conduct has been described by Plaintiff's expert, Mr. Katsaris, as being "excessive, egregious and immensely beyond the recognized, accepted and trained law enforcement procedures."  It

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

was "without any legitimate law enforcement or penological interest, need, or necessity." It was "purely an intentional infliction of a high level of pain" and "was not precipitated by any action" of Plaintiff.  The body cam videos alone justify a substantial punitive damage award.  The obvious after-the-fact fabrications and cover up by Eversole in his official reports and the lack of any MCSO discipline against Eversole for his conduct and false reporting further supports the imposition of punitive damages against him.

### *Defendants' Contention*

Punitive damages are only available on Plaintiff's claim for excessive force against Deputy Eversole. Neither Deputy Eversole nor Sheriff Penzone may be liable for punitive damages on the battery claim. *See* A.R.S. § 12-820.04. To prevail on his claim for punitive damages against Deputy Eversole, Plaintiff must demonstrate that Deputy Eversole's conduct was driven by evil motive or intent, or was recklessly or callously indifferent to Plaintiff's constitutional rights. *See Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Deputy Eversole deployed Shadow based on (1) his knowledge of the incident at Salt River Recreation; (2) the level of agitation and aggression he personally observed in Plaintiff during his interactions with Plaintiff up to that point; and (3) Plaintiff's apparent attempt to physically attack Deputy Jackson. He kept Shadow on-bite because the situation was not under control, such that the use of force could not safely be removed. Deputy Eversole's sole concern was Plaintiff's compliance with law enforcement directives and demonstrated ability and inclination to assault law enforcement officers. He was not trying to inflict pain, frighten Plaintiff, make him submit through pain, or punish him, and he released Shadow as soon as he determined it was safe to do so. Deputy Eversole did not violate Plaintiff's rights under the Fourth Amendment, and did not act with the requisite intent to support an award of punitive damages.

**2. The following are the issues of law to be determined:**

**a.  Whether Deputy Eversole is entitled to qualified immunity.**

### *Plaintiff's Contention*

At the time of his use of force, Deputy Eversole knew or must have known his conduct was unlawful as would any reasonable law enforcement official.   Eversole's violation of Plaintiff's rights is so patent and obvious that a prior body of case law on point is not required to defeat defendants' claim of qualified immunity.  *Maxwell v. Cnty. of San Diego,* 708 F.3d 1075, 1083 (9th Cir. 2013) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)).  Moreover, at the time of this incident there was of course binding authority in the Ninth Circuit and elsewhere that prohibited Eversole's egregious conduct.  Indeed, *Mendoza v. Block,* 27 F.3d 1357 (1994) and *Chew v. Gates,* 27 F.3d 1432 (9th Cir. 1994) state as much.

*Mendoza* involved deployment of a police K-9 on a suspected bank robber hiding in bushes on private property whom the deputies were aware had previously been jailed for bank robbery and who might be armed.  A K-9 was deployed to locate and seize Mendoza. Mendoza later sued the Los Angeles County deputies involved in his arrest.  In discussing the "clearly established" rule, the Ninth Circuit noted that it is not necessary for the plaintiff to show that the exact conduct involved has previously been held unlawful.  Recognizing that some constitutional violations are patent even if there is no prior case involving the same facts, the court said:

> For qualified immunity purposes, a right "must [be] 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he is doing violates that right." … *This does not mean that any official action is protected by qualified immunity "unless the very action in question has previously been held unlawful," but it does require that "in the light of pre-existing law the unlawfulness must be apparent." Thus, when "the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts" that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established.*

*Mendoza*, 27 F.3d at 1361 (emphasis added)(internal citations omitted).  Though the Court affirmed the dismissal of this particular  K-9 "find, seize and hold" case on qualified

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

- 16 -

immunity grounds[1], the court held that no special analysis is required where the force used is the deployment of a K-9 and that the analysis is the same with a dog deployment as it is with other applications of force such as physical restraint, use of baton or a gun. *Id.* at 1362. The court said, "We do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a "weapon" might become unlawful. *For example, no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control. An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury*" *Id.* at 1362 (emphasis added).

The above example of a patent violation described in *Mendoza* is exactly what occurred here. Eversole deployed his K-9 and allowed the dog to bite plaintiff for more than three minutes while Plaintiff was unarmed, handcuffed, in custody, fully contained and under the deputies' complete control. Under *Mendoza,* it is obvious that defendants are not entitled to qualified immunity.

Shortly after the *Mendoza* decision, the Ninth Circuit reaffirmed the above quoted pronouncement in another "find, seize and hold" K-9 case, *Chew v. Gates, supra.* In *Chew*, the plaintiff sued the dog handler in question and the Los Angeles Police Department ("LAPD"). The trial court dismissed the action against LAPD on qualified immunity grounds but the case against the dog handler continued and the dog handler was found liable for the plaintiff's injuries. On appeal, the Ninth Circuit addressed only the liability claim against the LAPD based on its policy of permitting the use of K-9s to apprehend a concealed suspect. While the court found that claim was also subject to qualified immunity, it again distinguished cases very similar to Plaintiff's where surrendered or handcuffed suspects

[1] There is an obvious distinction between "find, seize and hold" K-9 cases where the suspect has not been captured, is hiding and could be armed and dangerous compared to directing a police dog to bite an unarmed, handcuffed, jailed and well controlled pre-trial detainee, such as Plaintiff.

were bitten by police dogs. *Chew,* 27 F.3d at 1448.  Regarding the "clearly established"

criteria, the *Chew* court also followed *Mendoza* saying:

> We read our decision in *Mendoza* as meaning exactly what it
> said: it is clearly established that *under some circumstances* the
> use of police dogs is unlawful. However, that conclusion clearly
> does not advance Chew's cause. The *Mendoza* court gave the
> following example of the type of conduct that it considered
> prohibited by clearly established law: *"No particularized case
> law is necessary  for a deputy to know that excessive force has
> been used when a deputy sics a canine on a handcuffed arrestee
> who has fully surrendered and is completely under control." Id.
> at 5629-30. While this statement of the law is indisputable, the
> policy at issue here is far different from the siccing of dogs on
> handcuffed arrestees.*

*Chew,* 27 F.3d at 1448-1449 (emphasis added).  *Mendoza* and *Chew* were decided some

17 years before this incident.  Those cases clearly gave notice to Eversole that his

deployment of the dog on Plaintiff was unlawful.

In another case decided well before this incident, the Ninth Circuit affirmed the

district court's denial of summary judgment on qualified immunity where the duration of

the K-9 deployment was excessive. *See Watkins v. City of Oakland,* 145 F.3d 1087 (9th Cir.

1998).  In *Watkins,* the officer allowed the canine to continue to bite a suspect who was

fully surrounded by armed officers.  While the suspect failed to show his hands as

commanded, he was unable to comply "because he was recoiling from the pain of the dog

bite."  *Id.* at 190, 193.  This case clearly put Eversole on notice that he could not continue

to allow his K-9 to continue to bite Plaintiff for more than three minutes because he

supposedly was not complying with commands while he was writhing on the ground in fear

and pain.  *See also, Koistra v. County of San Diego,* 310 F. Supp. 3d 1066, 1084 (S.D. Cal.

2018)("As to the prolonged use of canine force *Mendoza* and *Watkins* provided notice that

a canine officer cannot continue to use force against someone, like Koistra, who had

surrendered by putting her arms up and asserted she was unarmed … it was clearly

established and a reasonable officer would have known that the continued seizure by a

police canine after Koistra surrendered for an additional 30 seconds was unlawful").  *See

also, Smith v. City of Hemet,* 394 F.3d 689 (9th Cir. 2005)(finding triable issues as to whether

K-9 deployment on slightly resisting and non-compliant unarmed domestic abuse was unlawful); *Tuuamalemalo v. Greene,* 2019 U.S. App. LEXIS 38360 (9th Cir. 12/24/2019)(no qualified immunity for officer who used a choke hold on non-resisting suspect pinned to the ground and surrounded by law enforcement); *Starstead v. Superior,* 533 F. Supp. 1365 (W. D. Wisc. (1982)(immunity denied in a municipal liability case discussing seven separate K-9 incidents involving surrendered, detained, or handcuffed suspects, each of which constituted a constitutional deprivation); *Luce v. Hayden,* 598 F. Supp. 1101, 1103-1104 (D. Maine, 1984)(immunity denied where K-9 deployed on handcuffed suspect lying prone on the ground and noting that such conduct "shock[s] the conscience.").

Based on the foregoing case law, the Court has already made the following finding in this case, "the Court concludes that it was clearly established by July 2017 that an officer may not use force, including the force of a canine, against a suspect who has been subdued or been rendered helpless." [Doc. 136 at p. 26].

### **_Defendants' Contention_**

Recent Ninth Circuit case law supports the proposition that it was not clearly established in July 2017 that using a police dog on a noncompliant suspect, who had resisted lesser methods of force to complete his arrest, was unconstitutional. *See Hernandez v. Town of Gilbert*, 989 F.3d 739, 743 (9th Cir. Mar. 4. 2021).[2] In *Hernandez*, a Gilbert Police Department officer saw the plaintiff's vehicle swerving on the road and attempted to pull him over. *Id*. at 742. The plaintiff continued driving until he reached his home, where he pulled into his garage and shut off the vehicle. *Id*. Over the next several minutes, the plaintiff refused dozens of verbal orders to step out of the vehicle, as well as warnings that he would

---

[2] Defendants cited the district court's opinion in *Hernandez v. Town of Gilbert*, No. CV-17-02155-PHX-SMB, 2019 WL 1557538, at *10 (D. Ariz. Apr. 10, 2019) (granting qualified immunity on the plaintiff's excessive force claim where it was not clearly established as of May 2016 that police officers' conduct would violate clearly-established constitutional rights of the plaintiff), but the Court did not address this particular case in its Order denying Defendants' Motion for Summary Judgment.

be arrested if he failed to comply. *Id*. Officers then warned the plaintiff at least five times that a police dog would be used to bite him and pull him from the vehicle, but the plaintiff still refused. *Id*. The canine officer gave one final warning and then released the dog to enter the vehicle. *Id*. The dog bit the plaintiff on the arm, and remained on-bite for 36 seconds before the officer gave the release command. *Id*. at 742–43. About 14 seconds later, the dog released the bite on the plaintiff's upper arm, but hung onto his shirt for another 22 seconds before completely releasing the bite. *Id*. at 743. The officers then pulled the plaintiff from the vehicle (which the plaintiff continued to resist), moved him to the driveway, and handcuffed him. *Id*.

In affirming the district court's order granting summary judgment on qualified immunity grounds, the Ninth Circuit held that *Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994)—which this Court relied on in finding that it was clearly established in July 2017 that "an officer may not use force, including the force of a canine, against a suspect who has been subdued or been rendered helpless"—"does not place 'beyond debate' whether [a law enforcement officer's] use of a police dog to facilitate [a suspect's] arrest under the circumstances of this case violated the Fourth Amendment." *Hernandez*, 2021 WL 821943 at *4. Specifically, the Ninth Circuit held that *Mendoza* did not clearly establish a potential violation of rights in a case involving "officers using minimal force at the beginning of an encounter and escalating the level of force employed, ultimately deciding to use a police canine when other methods were unsuccessful." *Id*. Because the encounter did not begin with the use of a dog bite, but progressed from verbal commands to physical handling to pepper spray, to warnings the dog would be deployed to the dog bite, "*Mendoza* does not clearly establish that [the officer's] conduct in eventually deploying [the canine] was unconstitutional." *Id*.

Here, unlike the *Hernandez* plaintiff, who had only swerved his vehicle while driving but did not cause an accident, Plaintiff started a fight with two deputies much larger than him, causing serious injuries to Deputy Crissinger, and continued to refuse to obey lawful

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

commands of deputies on-scene even after he was restrained. During the transport to the substation, he managed to move his restrained hands in front of him, an action Deputies Jackson and Eversole and Officer Fleming all recognized as a sign he intended to keep fighting. During the escort from the vehicle to the cell, Plaintiff attempted to pull away from Deputy Jackson, even after receiving several warnings that he would be bitten if he fought. In the cell, Plaintiff continued to resist Deputy Jackson's attempts at physical handling to remove the handcuffs, lunged up at Deputy Jackson from the bench, and attempted to strike him; he also kicked at Deputy Jackson and Officer Fleming several times, all while Shadow sat nearby barking loudly. While on the ground, Plaintiff said he would comply, but then continued to resist Deputy Jackson's efforts to remove the handcuffs and kicked Deputy Eversole several times. These facts bring this case more within *Hernandez* than *Mendoza*, such that the Court should find Deputy Eversole is entitled to qualified immunity because it was not clearly established in July 2017 any more than it was in May 2016 that use of a law enforcement canine in this situation would violate Plaintiff's constitutional rights.

The cases Plaintiff cites all suffer from a flaw that is all too common in the Ninth Circuit—defining qualified immunity questions at too high a level of generality. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts—and the Ninth Circuit in particular, *see* [*Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)]—not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") In *Mullenix*, the Supreme Court rejected the Fifth Circuit's overly broad formulation in a Fourth Amendment case, which it said was almost identical to the Ninth Circuit's formulation that the Supreme Court rejected in *Brosseau*, where the Ninth Circuit merely relied on the general test for excessive force stated in *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). *Mullenix v. Luna*, 136 S.Ct. 305, 308-09 (2015). Similarly, in *City and County of San Francisco v. Sheehan*, the Supreme Court rejected the Ninth Circuit's use of the

*Graham* standard to define the qualified immunity question, stating "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." 135 S.Ct. 1765, 1775-76 (2015). And in *Kinsela v. Hughes*, the Supreme Court both rejected the Ninth Circuit's overly broad formulation and noted that it had previously done so with regard to the Ninth Circuit's formulation in *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), as well. 138 S.Ct. 1148, 1154 (2018). Even if Plaintiff's cases at one time provided the proper standard, they no longer do. *Hernandez* provides the proper standard, and its holding that it was not clearly established in 2016 that the use of a police canine under circumstances similar to those at issue here violated the Fourth Amendment controls. Deputy Eversole is entitled to qualified immunity.

### b. Whether Deputy Eversole's use of force was excessive and violated Plaintiff's rights under the Fourth Amendment.

### *Plaintiff's Contention*

For the same reasons discussed in Plaintiff's Contention as to subsection a. above, there is no legal justification for Eversole's use of force in the first place or for the duration of his use of force.  Nor could he have reasonably believed under the circumstances that his conduct was lawful.   As the Court has already noted:

> In the context of a detainee like Plaintiff, factors to consider in assessing the reasonableness of force may include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. This list is not exhaustive, but only "potentially relevant to a determination of excessive force." *Id.* Courts have also considered whether proper warnings were given before the force was applied and the "relative culpability" of the parties in creating the dangerous situation. *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (considering officer's failure to warn plaintiff that he would be shot if he did not comply with the officer's orders and what other tactics, if any, were available to effect the arrest in determining whether force used was reasonable); *Scott*, 550 U.S. at 384 (noting that the parties' "relative culpability" *i.e.,*

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which party created the dangerous situation and which party is more innocent, may also be considered).

Further, the factors to be considered when force is used on a detainee may differ from those to be considered in other contexts such as a fleeing or hiding suspect, or a suspect resisting arrest. *Kingsley v. Hendrickson*, 576 U.S. 389, 392 (2015)(quoting *Graham*, 490 U.S. at 396). [Doc. 136 at pp. 12-13]. See also, MSJ Resp. [Doc. 126].

### *Defendants' Contention*

A use of force during an arrest must be "objectively reasonable" under the totality of the circumstances. *Graham*, 490 U.S. at 397. The Court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must take into account "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97. Analyzing these factors as set forth above, Deputy Eversole's use of force was not excessive and did not violate Plaintiff's rights under the Fourth Amendment. (*See also* Doc. 102, 132.)

### c. Whether Deputy Eversole's use of force constituted a battery under Arizona law.

### *Plaintiff's Contention*

See Plaintiff's Contentions set forth in Section 1 (b), above.  See also MSJ Resp. [Doc. 126].

### *Defendants' Contention*

To establish a battery, Plaintiff must prove that Deputy Eversole "intended to cause harmful or offensive contact" with him. *Ryan*, 245 Ariz. at 59. It is not enough that Deputy Eversole performed intentional acts; he must have "desire[d] to cause [the] consequences of his act, or . . . believe[d] that the consequences [were] substantially certain to result from it." *Id*. (quoting Restatement (Second) of Torts § 8A, cmt. a & b). Analyzing these factors as set forth above, Deputy Eversole did not commit a battery against Plaintiff. (*See also* Doc. 102, 132.)

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

### d.  Whether Deputy Eversole's use of force was justified under Arizona law.

#### *Plaintiff's Contention*

See Plaintiff's Contentions set forth in Sections 1 (c) – (e), above.  See also MSJ Resp. [Doc. 126].

#### *Defendants' Contention*

A.R.S. § 13-404(A) provides that physical force is justified "when and to the extent a reasonable person would believe that [it] is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force." A.R.S. § 13-406 provides that physical force is justified "to protect a third person if, under the circumstances as a reasonable person would believe them to be, such person would be justified under § 13-404 … in threatening or using physical force … to protect himself against the unlawful physical force … a reasonable person would believe is threatening the third person he seeks to protect." "[A.R.S. §] 13-409 provides a justification defense for law enforcement officers who use physical force[.]" *Ryan*, 245 Ariz. at 62. Analyzing these facts as set forth above, Deputy Eversole's use of force was justified under one or more of these statutes, such that he is immune from liability. (*See also* Doc. 102, 132.)

### e.  Whether Plaintiff is entitled to compensatory damages, and if so, how much.

#### *Plaintiff's Contention*

See Plaintiff's Contentions set forth in Sections 1 (f), above.  See also MSJ Resp. [Doc. 126].  In addition, Plaintiff has incurred medical and counseling bills for the treatment of his injuries.

#### *Defendants' Contention*

As set forth above, Defendants are not liable to Plaintiff on either his Fourth Amendment claim or his state-law battery claim, such that Plaintiff is not entitled to compensatory damages. Any damages to which Plaintiff may be entitled are minimal, as he is seeking only $6,298.02 in medical and mental health special damages, and has disclosed

no lost wages or other economic damages.  Plaintiff's post-incident actions belie any claims of continued injury, whether physical or emotional, or significant pain and suffering.

**f.   Whether Plaintiff is entitled to punitive damages, if so, how much.**

### *Plaintiff's Contention*

See Plaintiff's Contentions set forth in Sections 1 (g), above.  See also MSJ Resp. [Doc. 126].

### *Defendants' Contention*

To prevail on his claim for punitive damages against Deputy Eversole on his Fourth Amendment claim, Plaintiff must demonstrate that Deputy Eversole's conduct was driven by evil motive or intent, or was recklessly or callously indifferent to Plaintiff's constitutional rights. *See Morgan*, 997 F.2d at 1255 (citing *Smith*, 461 U.S. at 56). Analyzing these factors as set forth above, Plaintiff is not entitled to punitive damages. (*See also* Doc. 102, 132.)

**F.  Witness Lists.**

### *Plaintiff's Witnesses*

a.      **Shane McGough.**  Mr. McGough is a fact witness.  He is expected to testify live at trial.  He is expected to testify consistently with his deposition testimony in this matter.   He will testify concerning the events leading to his arrest, his altercation with Deputies Crissinger and Finney, and the events occurring during his transport to the MCSO substation, being escorted into the MCSO holding cell and the events occurring in the holding cell.  He will also testify to his physical and psychological injuries from the K9 attack, his treatment for his injuries, and his permanent scarring and numbness from the dog bites.  He is also expected to rebut various aspects of defendant Eversole's testimony and reports regarding the incident as well as the testimony and reports from Deputy Jackson and Forest Service Officer Fleming.

b.      **Tim McGough.**  Mr. McGough is Shane McGough's father.  He is a fact witness.  He is expected to testify live at trial. He will testify regarding Shane's damages,

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

including symptoms of the emotional damage Shane has suffered that he has personally observed since the incident of July 15, 2017.

c.      **Shaun Richard Eversole.**   Mr. Eversole is a fact witness.  He is expected to testify live at trial.  He is expected to testify consistent with his deposition in this matter and his Declaration submitted with the defendants' Motion for Summary Judgment.    If it appears that Mr. Eversole will not be present at trial, Plaintiff will designate portions of his deposition to read at that trial.

d.      **Alden J. Jackson.**    Mr. Jackson is a fact witness.  He is expected to testify live at trial.  He is expected to testify consistent with his deposition in this matter and his Declaration submitted with the defendants' Motion for Summary Judgment.   If it appears that Mr. Jackson will not be present at trial, Plaintiff will designate portions of his deposition to read at that trial.

e.      **Kelly M. Fleming.**  Ms. Fleming is a fact witness.  She is expected to testify live at trial.  She is expected to testify consistent with her deposition in this matter and her Declaration submitted with the defendants' Motion for Summary Judgment.   If it appears that Ms. Fleming will not be present at trial, Plaintiff will designate portions of her deposition to read at that trial.

f.      **Judith Phillips Wellek, LCSW.**   Ms. Wellek is a psychotherapist who provided counseling and psychotherapy treatment to Shane McGough.   She is an expert witness who is expected to testify live at the trial to her diagnosis and treatment of Plaintiff and her related charges consistent with her records and billings and her July 16, 2019 expert witness report in this matter.

g.      **W. Ken Katsaris.**   Mr. Katsaris is a law enforcement use of force expert witness who is expected to testify live at the trial of this matter.  He is expected to testify consistently with his July 17, 2019 report in this matter and to rebut the use of force opinions offered by defendants' dog training expert, Robert Eden.

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

h.   **Robert Buckley**.  Mr. Buckley works for MCSO in property and evidence and is also a volunteer MCSO posse member who worked at the substation where the K9 deployment occurred. He witnessed some of the events at issue in this lawsuit.  He is expected to testify consistent with his November 8, 2018 interview.

i.   **Custodians of Record.**   Records custodians for all exhibits, witnesses, agencies, entities, departments, providers, and personnel, and persons most knowledgeable are expected to testify concerning chain of custody of any evidence introduced in this case and to lay foundation for any exhibits introduced in this case.

### *Defendants' Witnesses*

a.   **Shane McGough** is the Plaintiff in this matter and a fact witness. He is expected to testify regarding his knowledge of the events of July 15, 2017, including but not limited to his repeated refusals to comply with lawful orders from various MCSO deputies, including Deputies Finney, Crissinger, Eversole, and Jackson, as well as Officer Fleming; his active resistance and assaultive behavior that caused physical injuries to Deputies Finney and Crissinger and his continued assaultive behavior towards Deputies Eversole and Jackson and Officer Fleming in the holding cell; his failure to heed Deputy Eversole's repeated warnings that he would be bitten if he fought; and his continued resistance and attempts to fight while Shadow was on-bite. Plaintiff is also expected to testify regarding his criminal history both before and after the subject incident.

b.   **Shaun Eversole** is a Defendant in this matter and a fact witness. He is expected to testify regarding his experience and training as an MCSO deputy and canine handler, as well as his knowledge of the events of July 15, 2017, including but not limited to information he learned about the altercation between Plaintiff and Deputies Finney and Crissinger at the Salt River Recreation Area; Plaintiff's repeated refusals to comply with lawful orders from various MCSO deputies, including Deputies Finney, Crissinger, Eversole, and Jackson, as well as Officer Fleming; Plaintiff's active resistance and assaultive behavior towards Deputies Eversole and Jackson and Officer Fleming in the

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

holding cell; Plaintiff's failure to heed Deputy Eversole's repeated warnings that he would be bitten if he fought; Plaintiff's continued resistance and attempts to fight while Shadow was on-bite; the effect Shadow had on Plaintiff's continued resistance; and the reasons he placed Shadow on-bite and the factors that went into his decisions to keep Shadow on-bite and release him from the bite.

c.    **Alden Jackson** is a fact witness. He is expected to testify regarding his experience and training as an MCSO deputy, as well as his knowledge of the events of July 15, 2017, including but not limited to information he learned about the altercation between Plaintiff and Deputies Finney and Crissinger at the Salt River Recreation Area; Plaintiff's repeated refusals to comply with lawful orders from various MCSO deputies, including Deputies Finney, Crissinger, Eversole, and Jackson, as well as Officer Fleming; Plaintiff's active resistance and assaultive behavior towards Deputies Eversole and Jackson and Officer Fleming in the holding cell; Plaintiff's failure to heed Deputy Eversole's repeated warnings that he would be bitten if he fought; Plaintiff's continued resistance and attempts to fight while Shadow was on-bite; the effect Shadow had on Plaintiff's continued resistance; and the factors he considered when advising Deputy Eversole to release Shadow from the bite.

d.    **David Crissinger** is a fact witness. He is expected to testify regarding his experience and training as an MCSO deputy, as well as his knowledge of the events of July 15, 2017, including but not limited to Plaintiff's repeated refusals to comply with lawful orders from various MCSO deputies, including Deputies Finney and Crissinger, and Plaintiff's active resistance and assaultive behavior that caused physical injuries to Deputies Finney and Crissinger, as well as the extent of the injuries he suffered as a result of Plaintiff's actions.

e.    **Michael Finney** is a fact witness. He is expected to testify regarding his experience and training as an MCSO deputy, as well as his knowledge of the events of July 15, 2017, including but not limited to Plaintiff's repeated refusals to comply with lawful

orders from various MCSO deputies, including Deputies Finney and Crissinger, and Plaintiff's active resistance and assaultive behavior that caused physical injuries to Deputies Finney and Crissinger, as well as the extent of the injuries he suffered as a result of Plaintiff's actions.

f.  **Geoffrey Hossack** is a fact witness. He is expected to testify regarding his experience and training as an MCSO deputy, as well as his knowledge of the events of July 15, 2017, including but not limited to Plaintiff's repeated refusals to comply with lawful orders from various MCSO deputies, and Plaintiff's continued active resistance following the assaultive behavior that caused physical injuries to Deputies Finney and Crissinger, as well as the extent of the injuries he observed Deputies Finney and Crissinger to have suffered as a result of Plaintiff's actions.

g.  **Robert Marske** is a fact witness. He is expected to testify regarding his experience and training as an MCSO detective, as well as his knowledge of the events of July 15, 2017, including but not limited to his investigation into Plaintiff's criminal conduct, preparation of his report, and interview(s) of Plaintiff.

h.  **Kelly Fleming** is a fact witness. She is expected to testify regarding her experience and training as a United States Forest Service Law Enforcement Officer, as well as her knowledge of the events of July 15, 2017, including but not limited to information she learned about the altercation between Plaintiff and Deputies Finney and Crissinger at the Salt River Recreation Area; Plaintiff's repeated refusals to comply with lawful orders from various MCSO deputies, including Deputies Finney, Crissinger, Eversole, and Jackson, as well as Officer Fleming; Plaintiff's active resistance and assaultive behavior towards Deputies Eversole and Jackson and Officer Fleming in the holding cell; Plaintiff's failure to heed Deputy Eversole's repeated warnings that he would be bitten if he fought; Plaintiff's continued resistance and attempts to fight while Shadow was on-bite; and the effect Shadow had on Plaintiff's continued resistance.

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

i.      **Joe Garley** is a fact witness. He is expected to testify regarding his knowledge of the events of July 15, 2017, including but not limited to Plaintiff's assaultive behavior towards Deputies Finney and Crissinger and the deputies' attempts to de-escalate the situation before Plaintiff punched Deputy Finney in the face and began fighting with both deputies, resulting in their injuries.

j.      **Robert Eden** is an expert witness. He is expected to testify regarding his extensive training and experience as a law enforcement officer, and specifically as a law enforcement canine handler and trainer. He will testify consistent with his expert report disclosed on August 16, 2019, and will rebut any expert opinions offered by Ken Katsaris.

k.      **Custodians of Record.** Record custodians for all witnesses, agencies, entities, departments, providers, and personnel, and persons most knowledgeable are expected to testify concerning chain of custody of any evidence introduced in this case and to lay foundation for any exhibits introduced in this case.

**G. Exhibit List.**[3]

1. ***Stipulated Exhibits:*** The following exhibits are admissible in evidence and may be marked in evidence by the Courtroom Deputy Clerk:

All exhibits listed below as to which no objection is stated.

2. ***Plaintiff's Exhibits and Defendants' Objections***:

| Exhibit Number | Plaintiff's Exhibit Description | Defendants' Objections |
|---|---|---|
| 1 | A. Jackson Incident Report Supplement (McGough_000131-132) | Rules 401, 402, 403, 801, 802, 805, 901 |
| 2 | S. Eversole Incident Report Supplement (McGough_000148-149) | Rules 401, 402, 403, 801, 802, 805, 901 |
| 3 | K. Fleming Incident Report dated 7/17/2017 | Rules 401, 402, 403, 801, 802, 805, 901 |
| 4 | A. Jackson Use of Force Report (MCSO_00251-255) | Rules 401, 402, 403, 801, 802, 805, 901 |

---

[3] If there are more than 20 exhibits, the parties shall submit their exhibit lists in writing, five days before trial by email to humetewa_chambers@azd.uscourts.gov or on CD-Rom or USB flash drive.

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| 5 | S. Eversole Use of Force Report (MCSO-00246-250) | Rules 401, 402, 403, 801, 802, 805, 901 |
|---|---|---|
| 6 | Maricopa County / Animal Control Services Bite Report | Rules 401, 402, 403, 801, 802, 901; Disclosure |
| 7 | MCSO Use of Force Policy (000120-125) | Rule 901 |
| 8 | MCSO Use of Force Policy Revisions 3-31-2017 (McGough_000159) | Rule 401, 402, 403, 901 |
| 9 | MCSO Canine Unit Operations Policy (MCSO-00263-266) | Rule 901 |
| 10 | MCSO Code of Conduct and Deputy Oath of Office (McGough_000160-177) | Rules 401, 402, 403, 901 |
| 11 | MCSO Use of Force Lesson Plan | Rules 401, 402, 403, 901 |
| 12 | MCSO Supplemental Report (McGough_000130) | Rules 401, 402, 403, 801, 802, 901 |
| 13 | Shaun Eversole Sentencing Letter (McGough_000294) | Rules 401, 402, 403, 801, 802, 901 |
| 14 | Banner Baywood Medical Records | Rule 801, 802, 805, 901 |
| 15 | Allcare Medical Records | Rule 801, 802, 805, 901 |
| 16 | HonorHealth SOMC Wound Clinic Records | Rule 801, 802, 805, 901 |
| 17 | Judith Wellek LCSW Counseling Records | Rule 801, 802, 805, 901 |
| 18 | Rural Metro Ambulance Bill | Rule 801, 802, 805, 901 |
| 19 | Envision Healthcare / Southwest General EMT Bill | Rule 801, 802, 805, 901 |
| 20 | Banner Baywood Medical Center Bill | Rule 801, 802, 805, 901 |
| 21 | Emergency Physicians Southwest Bill | Rule 801, 802, 805, 901 |
| 22 | Allcare Internal Medicine Bill | Rule 801, 802, 805, 901 |
| 23 | Dennis E. Weiland, M.D. Bill | Rule 801, 802, 805, 901 |
| 24 | HonorHealth Wound Clinic Bill | Rule 801, 802, 805, 901 |
| 25 | Sonora Quest Lab Bill | Rule 801, 802, 805, 901 |
| 26 | Judith Wellek LCSW Bill | Rule 801, 802, 805, 901 |
| 27 | Medical Bill Summary | Rules 403, 801, 802, 901, 1006 |
| 28 | MCSO Photos from Banner Baywood (MCSO-00318-463) | Rules 403, 801, 802, 901 |
| 29 | Photos of Dog Bite Injuries to Shane McGough from 07/24/2017 | Rules 403, 801, 802, 901 |
| 30 | Photos of Dog Bite Injuries to Shane McGough from 07/25/2017 | Rules 403, 801, 802, 901 |
| 31 | Photos of Dog Bite Injuries to Shane McGough from 07/26/2017 | Rules 403, 801, 802, 901 |
| 32 | Photos of Dog Bite Injuries to Shane McGough from 07/27/2017 | Rules 403, 801, 802, 901 |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| 33 | Photos of Dog Bite Injuries to Shane McGough from 07/31/2017 | Rules 403, 801, 802, 901 |
|---|---|---|
| 34 | Photos of Dog Bite Injuries to Shane McGough from 08/06/2017 | Rules 403, 801, 802, 901 |
| 35 | Photos of Dog Bite Injuries to Shane McGough from 08/19/2017 | Rules 403, 801, 802, 901 |
| 36 | Photos of Dog Bite Injuries to Shane McGough from 08/27/2017 | Rules 403, 801, 802, 901 |
| 37 | Photos of Dog Bite Injuries to Shane McGough from 09/01/2017 | Rules 403, 801, 802, 901 |
| 38 | Photos of Dog Bite Injuries to Shane McGough from 09/09/2017 | Rules 403, 801, 802, 901 |
| 39 | Photos of Dog Bite Injuries to Shane McGough from 09/17/2017 | Rules 403, 801, 802, 901 |
| 40 | Photos of Dog Bite Injuries to Shane McGough from 10/01/2017 | Rules 403, 801, 802, 901 |
| 41 | Photos of Dog Bite Injuries to Shane McGough from 10/08/2017 | Rules 403, 801, 802, 901 |
| 42 | Photos of Dog Bite Injuries to Shane McGough from 11/16/2017 | Rules 403, 801, 802, 901 |
| 43 | Shane McGough Scar Photos from 09/15/2018 | Rules 403, 801, 802, 901 |
| 44 | Body Cam Video from Deputy S. Eversole (file no. AXON_Flex_Video_2017-07-15_1851 | |
| 45 | Body Cam Video from Deputy A. Jackson (file no. AXON_Flex_Video_2017-07-15_1909 | |
| 46 | Body Cam Video from U.S. Forest Service Officer K. Fleming (file no. 26. BODY.X78076495.0235.170715.190428.1174) | |
| 47 | Body Cam Video from Deputy S. Eversole (AXON_Flex_Video_2017-07-15_1921) | |
| 48 | Edited, Synced and Dubbed Body Cam Video AXON_Flex_Video_2017-07-15_1909(Previously Plaintiff's Non-Electronic Exhibit 2 to Plaintiff's Response to Defendants Motion for Summary Judgment) | Rules 403, 801, 802, 901; Disclosure |
| 49 | Excerpts and Still Screen Captures of Body Cam Videos | Rules 403, 801, 802, 901 |
| 50 | KTAR Radio Interview Recording and Transcript of Sheriff Penzone dated 9-10-2018 | Rules 401, 402, 403, 801, 802; *See* Defendants' Motion in Limine |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| 51 | MCSO Press Conference recording from 09-12-2018 | Rules 401, 402, 403, 801, 802; *See* Defendants' Motion in Limine |
|---|---|---|
| 52 | MCSO-01431 IA2017-0872 Buckley Interview>Redacted | Rules 401, 402, 403, 407, 801, 802; Doc. 138, 144; *See* Defendants' Motion in Limine |
| 53 | MCSO-1479 Eversole Interview_Redacted | Rules 401, 402, 403, 407, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 54 | MCSO-1467 Jackson Interview_Redacted | Rules 401, 402, 403, 407, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 55 | MCSO Administration Investigation IA#2017-0872 - Body Cam Summary from AXON_Flex_Video_2017-07-15_1852 (Alden Jackson)(MCSO-01894-01897) | Rules 401, 402, 403, 407, 701, 702, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 56 | MCSO Administration Investigation IA#2017-0872 - Body Cam Summary from AXON_Flex_Video_2017-07-15_1851 (Shaun Eversole)(MCSO-01897-01901) | Rules 401, 402, 403, 407, 701, 702, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 57 | MCSO Administration Investigation IA#2017-0872 - Body Cam Summary from 26BODY-1 (Kelly Flemming)(MCSO-01902-01906) | Rules 401, 402, 403, 407, 701, 702, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 58 | MCSO Administration Investigation IA#2017-0872 – Memorandum re Notice of Findings dated 5/12/2020 (MCSO-02033) | Rules 401, 402, 403, 407, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 59 | MCSO Administration Investigation IA#2017-0872 – Memorandum re Notice of Findings dated 6/9/2020 (MCSO-02036) | Rules 401, 402, 403, 407, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
|  | ***Conditional Exhibits Possibly to be Offered by Plaintiff*:   Plaintiff is filing herewith a motion in limine regarding exclusion of testimony and documents concerning the events that transpired at the Salt River Recreation parking lot where Plaintiff was** |  |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| | | | |
|---|---|---|---|
| | | arrested.   Without waiving his objections to such evidence, to the extent that defendants are allowed to introduce witness testimony and other evidence regarding those matters, then Plaintiffs intend to offer the following additional exhibits for rebuttal and impeachment | |
| 60 | | MCSO-01433 BWC- Hossack (produced 3-9-2021) | Rules 401, 402, 403 |
| 61 | | MCSO-1470 IA2017-0872 Hossack Interview_Redacted (produced 3-9-2021) | Rules 401, 402, 403, 407, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 62 | | MCSO-1475 Interview Finney_Redacted | Rules 401, 402, 403, 407, 801, 802;  Doc. 138, 144; *See* Defendants' Motion in Limine |
| 63. | | W. Ken Katsaris's Declaration (doc. 101-2) (For identification only) | Rules 401, 402, 403, 702, 801, 802; *See* Defendants' Motion in Limine |
| 64. | | W. Ken Kasaris's Report and C.V. (doc. 95-2) (For identification only) | Rules 401, 402, 403, 702, 801, 802; *See* Defendants' Motion in Limine |

### 3. Defendants' Exhibits and Plaintiff's Objections:

| Exhibit Number | Exhibit Description | Plaintiff's Objections |
|---|---|---|
| 500. | Officer Crissinger Audio Statement MCSO-00267 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 501. | Joe Anthony Garley Audio Statement MCSO-00268 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 502. | Plaintiff's Audio Statement – Part 1 MCSO-00269 | Rules 401, 403, 404, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 503. | Plaintiff's Audio Statement – Part 2 MCSO-00270 | Rules 401, 403, 404, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |

The Guy Law Firm, P.L.L.C.
10015 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| 504. | MCSO Incident Report No. IR2017-021616 (for identification only) MCSO-00091-96; 125-130; 156-168 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
|---|---|---|
| 505. | CAD for IR17021635 MCSO-00230 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 506. | MCSO Policy No. CP-1: Use of Force Policy, effective 02/06/2016 MCSO00256 – 261 | |
| 507. | 02/06/2017 Traffic Ticket and Complaint MCSO-01247, 1251 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 508. | MCSO Policy No. GJ-25: Canine Operations Unit effective 02/22/2017 MCSO-00263 - 266 | |
| 509. | Change of Plea Hearing in Superior Court Case No. CR2017-132709-001 dated 12/15/2017 MCSO-00298 – 317 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 510. | Plaintiff's Order of Confinement MCSO-00073 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 511. | Canine Unit Action and Demonstration Unit Report for IR 17-021616 MCSO-00490 | |
| 512. | Incident Report 18017626 for failure to pass drug test at Durango Jail MCSO-01208 – 1209 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 513. | CAD History for IR17021635 MCSO-01221 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 514. | CAD History for Follow Up MCSO-01222 – 1223 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 515. | CAD History for Follow Up at Mountain Vista MCSO-01224 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 516. | CAD History for IR17021615 MCSO-01225 – 1229 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 517. | 06/25/2015 Traffic Ticket and Complaint MCSO-01244, 1248 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |

| 518. | 10/04/2018 Traffic Ticket and Complaint<br>MCSO-01245, 1249 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
|------|-------------------------------------------------------------|--------------------------------------------------------------------------------------|
| 519. | 10/28/2017 Traffic Ticket and Complaint<br>MCSO-01246, 1250 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 520. | October 28, 2017 DPS Report<br>MCSO-01241 – 1253 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 521. | Tempe Police Report for Assault on<br>August 18, 2013<br>MCSO-01254 - 1259 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 522. | Tempe Police Booking Record dated<br>August 18, 2013<br>MCSO-01260 - 1263 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 523. | Eversole AXON at 2017-07-15_1851<br>MCSO-00273 | |
| 524. | Jackson AXON at 2017-07-15_1909<br>MCSO-00274 | |
| 525. | CAD Event History for IR17021616<br>MCSO-01321 - 1330 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 526. | Superior Court Complaint for Aggravated<br>Assault<br>DEPUTY000001 – 7 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 527. | Superior Court Notice of Supervening<br>Indictment<br>DEPUTY000008 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 528. | Superior Court Indictment for Aggravated<br>Assault<br>DEPUTY00009 – 11 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 529. | Eversole UOF Report<br>(for identification only)<br>MCSO-00246–250 | |
| 530. | Jackson UOF Report<br>(for identification only)<br>MCSO-00251–255 | |
| 531. | Arizona State University Health Records<br>DEPUTY000067 – 298 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 532. | Judith Wellek Medical Records<br>DEPUTY000299 – 328 | |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| 533. | Scottsdale PD Crash Report 09-15063<br>DEPUTY000337 – 345 & 387 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
|------|------------------------------------------------------------------|------------------------------------------------------------------------------------|
| 534. | Finney UOF Report<br>(for identification only)<br>MCSO-00231–238 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 535. | Hossack UOF Report<br>(for identification only)<br>MCSO-00239–245 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 536. | SPD Report 16-07786 Leaving Scene of<br>Crash<br>DEPUTY000363 – 369 & 387 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 537. | SPD Report 18-00090 for Escort<br>DEPUTY000370 – 383 & 387 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 538. | SPD AXON Camera for Incident Report<br>18-000090, Part 1<br>DEPUTY000391 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 539. | SPD AXON Camera for Incident Report<br>18-000090, Part 2<br>DEPUTY000391 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 540. | Maricopa County Adult Probation File<br>DEPUTY000392 – 523 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 541. | Plaintiff's LinkedIn Page<br>DEPUTY000547 – 567 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 542. | Banner Health Records (received pursuant<br>to SDT)<br>DEPUTY000568 – 639 | |
| 543. | SAGE Counseling Records<br>DEPUTY000657 – 801 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 544. | Arizona State University Student Records<br>DEPUTY000802 – 910 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 545. | Decorative Paving Solutions Employment<br>Records<br>DEPUTY000911 – 927 | Rules 401, 403, 404, 802, 901<br>Fed. R. Evid.  See Plaintiff's<br>Motion in Limine. |
| 546. | Expert Robert Eden's Report<br>(for identification only)<br>DEPUTY000928 - 1007 | Rule 802 |
| 547. | Expert Robert Eden's Curriculum Vitae<br>DEPUTY000998 – 1006 | |

The Guy Law Firm, P.L.L.C.<br>10105 E. Via Linda, Suite 103<br>Scottsdale, Arizona 85258-5326<br>480.767.3175

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| 548. | Plaintiff's Facebook<br>DEPUTY001008 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
|---|---|---|
| 549. | Plaintiff's Instagram<br>DEPUTY001009 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 550. | Plaintiff's SnapChat<br>DEPUTY001010 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 551. | Declaration of Sgt. Eversole<br>(for identification only)<br>EX. 6 to DEFS' MSJ Dkt. 118 | Rule 802 |
| 552. | Declaration of Deputy Finney<br>(for identification only)<br>EX. 2 to DEFS' MSJ Dkt. 118 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 553. | Declaration of Deputy Hossak<br>(for identification only)<br>EX. 3 to DEFS' MSJ Dkt. 118 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 554. | Declaration of Sgt. Jackson<br>(for identification only)<br>EX. 5 to DEFS' MSJ Dkt. 118 | Rule 802 |
| 555. | Declaration of Expert Robert Eden<br>(for identification only)<br>EX. 8 to DEFS' MSJ Dkt. 118 | Rule 802 |
| 556. | AXON_Flex_Video_2017-07-15_1850<br>MCSO_00275 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 557. | Det. Hossak's AXON_Flex_Video_2017-07-15_1852_Redacted<br>MCSO_00276 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 558. | AXON_Flex_Video_2017-07-15_1900<br>MCSO_00277 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 559. | Sgt. Jackson AXON_Flex_Video_2017-07-15_1947_Redacted<br>MCSO_00281 | |
| 560. | Sgt. Eversole AXON_Flex_Video_2017-07-15_1947-file 2<br>MCSO_00282 | |
| 561. | Sgt. Hossak AXON_Flex_Video_2017-07-15_1952_Redacted<br>MCSO_00283 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 562. | Sgt. Eversole AXON_Flex_Video_2017-07-15_2017 | |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.5175

| | | |
|---|---|---|
| | MCSO_00284 | |
| 563. | AXON_Flex_Video_2017-07-15_2019 Redacted MCSO_00286 | |
| 564. | AXON_Flex_Video_2017-07-15_2049 Redacted MCSO_00288 | |
| 565. | Plaintiff's Claim Against US Dept. of Agriculture MCGOUGH-USFS-000001 - 27 | Rules 401 and 403, 802 Fed. R. Evid. |
| 566. | United States Dept. of Agriculture Forrest Services Incident Report MCGOUGH-USFS-000032 – 35 | |
| 567. | Cooperative Law Enforcement Agreement MCGOUGH-USFS-000036 – 44 | Rules 401 and 403, 901 Fed. R. Evid. |
| 568. | Penzone Request for Certification MCGOUGH-USFS-000045 – 49 | Rules 401 and 403, 901 Fed. R. Evid. |
| 569. | USFS Letter to Steven Guy MCGOUGH-USFS-000077 – 79 | Rules 401, 403, 802 901 Fed. R. Evid. |
| 570. | North Mesa Justice Court File MCGOUGH-USFS-000248 - 260 | Rules 401, 403, 404, 802, 901 Fed. R. Evid.  See Plaintiff's Motion in Limine. |
| 571. | McGough's Answers to  Interrogatories dated 01/14/2019 | Rule 401, Fed. R. Evid. |
| 572. | McGough's First Amended Answers to Interrogatories dated 02/14/2019 | Rule 401, Fed. R. Evid. |
| 573. | McGough's Second Amended Answers to Interrogatories dated 03/20/2019 | Rule 401, Fed. R. Evid. |

4. Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

## H. Depositions to be Offered.

### *Plaintiff's Deposition Designations*

***a.*** **Shaun Eversole (defendant), taken on 12/13/2018.**

| Page/Line | Objections, Counter-Objections |
|---|---|
| 6/12-14 | Deputy Eversole will testify live at trial, such that Plaintiff's designations of portions of his deposition testimony "to be read or submitted at trial" are improper. Should Deputy Eversole not testify at trial for unexpected reasons, Defendants reserve the right to object to Plaintiff's designations and make |

| | counter-designations at that time. |
|---|---|
| 7/7-13 | |
| 10/10-11/12 | |
| 12/23-13/12 | |
| 13/20-22 | |
| 14/13-15/14 | |
| 16/17-19/23 | |
| 21/15-22/15 | |
| 25/3-26/2 | |
| 26/12-28/19 | |
| 32/2-36/16 | |
| 36/19-37/1 | |
| 37/5-39/2 | |
| 39/11-41/4 | |
| 41/9-14 | |
| 44/1-7 | |
| 45/8-46/10 | |
| 47/2-48/4 | |
| 48/11-49/3 | |
| 49/15-50/11 | |
| 50/24-51/7 | |
| 51/11-16 | |
| 51/24-52/24 | |
| 53/4-24 | |
| 54/3-65/8 | |
| 65/22-66/10 | |
| 67/4-69/23 | |

| | |
|---|---|
| 70/1-3 | |
| 71/19-1 | |
| 72/10-74/25 | |
| 77/5-24 | |
| 78/3-19 | |
| 79/5-22 | |
| 80/2-5 | |
| 80/6-83/3 | |
| 83/22-84/21 | |
| 35/3-18 | |
| 86/24-88/17 | |
| 89/12-91/3 | |
| 92/5-93/20 | |
| 94/8-95/12 | |
| 96/11-97/14 | |
| 97/22-98/3 | |
| 98/21-99/10 | |
| 100/10-103/8 | |
| 103/12-109/14 | |
| 110/2-114/7 | |
| 114/17-119/6 | |
| 121/11-18 | |
| 122/9-123/9 | |
| 123/22-124/21 | |
| 125/8-127/7 | |
| 127/15-132/2 | |
| 132/10-133/1 | |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

The Guy Law Firm, P.L.L.C.
10015 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| | |
|---|---|
| 133/21-135/7 | |
| 135/16-136/8 | |
| 136/20-142/5 | |
| 142/18-146/11 | |
| 146/23-25 | |
| 147/11-148/13 | |
| 151/2-152/14 | |
| 153/11-13 | |
| 155/6-156/11 | |
| 160/2-165/2 | |
| 165/16-167/11 | |
| 172/2-173/17 | |
| 175/19-176/8 | |
| 176/14-178/3 | |
| 178/12-183/6 | |
| 183/17-23 | |
| 184/14-187/24 | |
| 188/22-24 | |
| 189/5-9 | |
| 193/16-194/1 | |

**b.  Alden Jackson (MCSO Deputy), taken on 12/13/2018.**

| Page/Line | Objections, Counter-Objections |
|---|---|
| 6/24-7/1 | Deputy Jackson will testify live at trial, such that Plaintiff's designations of portions of his deposition testimony "to be read or submitted at trial" are improper. Should Deputy Jackson not testify at trial for unexpected reasons, Defendants reserve the right to object to Plaintiff's designations and make counter-designations at that time. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| | |
|---|---|
| 9/7-20 | |
| 11/5-12 | |
| 11/23-12/6 | |
| 13/12-17 | |
| 13/23-14/23 | |
| 20/14-21/8 | |
| 22/9-23/15 | |
| 24/5-15 | |
| 24/25-25/18 | |
| 27/5-27/11 | |
| 41/7-44/5 | |
| 45/14-18 | |
| 45/23-46/18 | |
| 47/21-23 | |
| 48/14-49/19 | |
| 49/23-24 | |
| 50/24-51/24 | |
| 52/7-11 | |
| 56/3-11 | |
| 57/2-4 | |
| 60/1-5 | |
| 60/17-20 | |
| 61/2-64/19 | |
| 66/2-69/11 | |
| 69/22-70/21 | |
| 70/24-72/5 | |
| 72/25-73/21 | |

| 77/6-82/1 | |
| 82/24-83/23 | |
| 84/22-85/4 | |
| 85/20-89/5 | |

*c.* **Kelly Fleming (U.S.F.S. Officer), taken on 12/14/2018.**

| **Page/Line** | **Objections, Counter-Objections** |
| --- | --- |
| 6/18-20 | Officer Fleming will testify live at trial, such that Plaintiff's designations of portions of her deposition testimony "to be read or submitted at trial" are improper. Should Officer Fleming not testify at trial for unexpected reasons, Defendants reserve the right to object to Plaintiff's designations and make counter-designations at that time. |
| 10/7-15 | |
| 12/14-13/3 | |
| 13/16-25 | |
| 14/11-15/3 | |
| 15/23-18/13 | |
| 19/16-19 | |
| 21/13-22/13 | |
| 23/21-24 | |
| 24/7-17 | |
| 25/1-16 | |
| 25/21-27/1 | |
| 27/5-16 | |
| 28/1-5 | |
| 31/5-32/3 | |
| 32/13-33/24 | |
| 37/22-38/4 | |

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

| | |
|---|---|
| 48/25-49/2 | |
| 50/5-51/2 | |
| 55/25-57/21 | |
| 58/1-13 | |
| 59/2-15 | |
| 59/23-71/1 | |
| 71/16-18 | |
| 71/24-72/5 | |
| 72/13-20 | |
| 73/4-74/25 | |
| 75/7-80/15 | |
| 81/10-84/16 | |
| 89/7-11 | |
| 90/13-16 | |
| 102/20-22 | |
| 109/5-15 | |

### *Defendants' Deposition Designations*

Four depositions were taken in this case—Plaintiff, Deputy Eversole, Deputy Jackson, and Officer Fleming. All four deponents are expected to testify live at trial. Should any of them not testify at trial for unexpected reasons, Defendants reserve the right to make deposition designations at that time.

**I.   Motions in Limine.**

Motions in Limine and responses thereto shall be filed as separate pleadings and in accordance with the Court's Order Setting Final Pretrial Conference.

*Plaintiff has filed the following Motions in Limine:*

1. Motion in Limine No. 1 – Prior Acts.

2. Motion in Limine No. 2 -  Pre-Holding Cell Events.

3.   Motion in Limine No. 3 -  Prior Wrestling Background.

***Defendants have filed the following Motions in Limine:***

1.   Motion in Limine No. 1—Exclude W. Ken Katsaris

2.   Motion in Limine No. 2—Exclude Evidence Pertaining to Professional Standards Bureau Investigations

3.   Motion in Limine No. 3—Exclude Unrelated Law Enforcement Incidents

**J. List All Pending Motions.**

None.

**K. Procedures for Expediting Trial**

Defendants propose that the scope of Defendants' cross-examination of the following witnesses to be called during Plaintiff's case-in-chief be expanded to allow full examination and minimize the need to recall the witnesses during Defendants' case-in-chief:[4]

a.   Shane McGough;

b.   Shaun Eversole;

c.   Alden Jackson; and

d.   Kelly Fleming.

Defendants further propose that the Court issue juror questionnaires in preparation for jury selection, with responses due no less than two weeks before trial is scheduled to begin, in order to shorten jury selection.

**L. Estimated Length of Trial.**

  3   hours for opening statements and closing arguments.

  20   hours for Plaintiff(s)' case, including cross-examination of other parties' witnesses.

---

[4] Defendants reserve the right to recall any witnesses called by Plaintiff during his case-in-chief to address matters not already covered if necessary.

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

1
2

  20   hours for Defendant(s)' case, including cross-examination of other parties' witnesses.

3

  3    hours for rebuttal.

4

**M. Jury Demand.**

5

The parties stipulate that the demand for a jury trial was timely and proper.

6

**N. Proposed Set of Supplemental Voir Dire.**

7
8
9
10
11
12

The Court's proposed voir dire questions are located on the Court's website at www.azd.uscourts.gov under Judges' Information/Orders; Forms and Procedures; and Diane J. Humetewa. In addition, each party may separately file a proposed set of voir dire questions, not to exceed ten (10) each. The questions shall be drafted in a neutral manner. If the parties disagree about a particular question, the opponent shall state the reason for the objection immediately below the question.

13
14
15

Defendants further propose that the Court issue juror questionnaires in preparation for jury selection, with responses due no less than two weeks before trial is scheduled to begin, in order to shorten jury selection.

16

**O. Joint Proposed Jury Instructions.**

17
18
19
20
21
22
23
24
25

The parties shall file a joint list of proposed jury instructions and submit by email a copy in Microsoft Word to humetewa_chambers@azd.uscourts.gov. The list of proposed jury instructions should follow the Ninth Circuit Model Jury Instructions (2007) available on the Court's website at http://www.azd.uscourts.gov/judges/judges-orders. Disputed instructions shall be noted as such at the top of each instruction. Where an instruction is disputed, immediately following the content of the instruction, the proponent shall state supporting citations and authorities for the instruction. The party opposing the instruction shall state all objections to the instruction with citations and authorities supporting the objection. Where there are multiple defendants, identify the proposing or opposing party.

26

**P. Form of Verdict.**

27
28

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

Each party shall file a proposed from of verdict, including any proposed special verdict forms or juror interrogatories.

**Q. Recording of Proceedings.**

If a party requires special services such as daily copies or real time, they should make such request no later than two (2) weeks prior to trial to Linda Schroeder at Linda_Schroeder@azd.uscourts.gov.

**R. Certifications**.

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

4.      All discovery has been completed.

5.      The identity of each witness has been disclosed to opposing counsel.

6.      Each exhibit listed herein: (1) is in existence; (2) is numbered; and (3) has been disclosed and shown to opposing counsel.

7.      The parties have complied in all respects with the mandates of the Court's Rule 16 Scheduling Order and Order Setting Final Pretrial Conference.

8.      The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

9.      The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to this Order can be made without leave of Court.

**APPROVED AS TO FORM AND CONTENT:**

_____                    _____

Attorney for Plaintiff(s)                             Attorney for Defendants(s)

Based on the foregoing,

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175

1
2
3

     **IT IS ORDERED** that this Joint Proposed Final Pretrial Order jointly submitted by the parties is hereby **APPROVED** and **ADOPTED** as the Final Pretrial Order of this Court.

4
5

               DATED this __ day of March 2021.

6
7
8

               _____
               Hon. Diane J. Humetewa
               United States District Judge

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Guy Law Firm, P.L.L.C.
10105 E. Via Linda, Suite 103
Scottsdale, Arizona 85258-5326
480.767.3175