WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shane McGough,<br><br>            Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>            Defendants. | No. CV-18-01302-PHX-DJH<br><br>**ORDER** |

Pending before the Court are the parties' Motions in Limine (Docs. 146, 147, 148, 156, 160).[1] All of the motions are fully briefed. The Court is familiar with the underlying facts of this case.

**I.     Legal Standards**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). The Ninth Circuit has explained that motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Motions in limine are "entirely within the discretion of the Court."

---

[1] Defendants also move to exclude the testimony of Plaintiff's expert W. Ken Katsaris (Doc. 155), which will be addressed by separate order.

*Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42).  Moreover, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has pass."  *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001).

Motions in limine are "provisional" in nature.  *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in part on other grounds,* 613 F. App'x 610 (9th Cir. 2015).  The Court issues its rulings on motions in limine based on the record currently before it. Therefore, rulings on such motions "'are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial.'"  *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner))). "'Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.'" *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

Upon consideration of the parties' pending Motions in Limine, the Court makes the following Rulings:

**II.   Plaintiff's Motions in Limine**

    **A.   Plaintiff's Motion in Limine No. 1 (Doc. 146) and  Defendants' Response (Doc. 167)**

Plaintiff first seeks to preclude "all suggestion, testimony, evidence, or argument relating to any alleged prior bad acts or conduct of the Plaintiff" because such evidence is "irrelevant, unduly prejudicial, a waste of time, confusing, misleading, and unreliable hearsay." (Doc. 146 at 1-2).  Plaintiff further asserts that the prior acts are "inadmissible character evidence precluded by Rule 404(b)" . . . [and are] minor prior transgressions and

events [having] nothing whatsoever to do with the attack[.]" *Id*. at 2. The prior acts evidence is referred to as Plaintiff's Exhibits:

> 507:   2/06/2017 Traffic Ticket and Complaint;
> 517:   6/25/2015 Traffic Ticket and Complaint;
> 518:   10/04/2018 Traffic Ticket and Complaint;
> 519:   10/28/2017 Traffic Ticket and Complaint;
> 520:   October 28, 2017 DPS Report;
> 521:   August 18, 2013 Tempe Police Report for Assault;
> 536:   SPD Report 16-07786 Leaving Scene of Crash;
> 537    SPD Axon Camera for Incident Report Part 1;
> 539:   SPD Axon Camera for Incident Report Part 2;
> 544:   Arizona State University Student Records;
> 545    Decorative Paving Solutions Employment Records

Defendants' Response (Doc. 167) notes that Plaintiff fails to provide the actual content of the exhibits and the Court should therefore summarily reject his Motion as too broad. (*Id*. at 1). Defendant's position is well-taken. The Court is obligated to determine the admissibility and relevance of evidence that the parties intend to introduce at trial. *See* Fed.R.Evid. 401 and 402. Yet, the Court cannot ascertain the probative value of the enumerated exhibits given the parties' cursory descriptions of them, e.g., "an August arrest for assault;" "disorderly conduct and trespass;" "a June 28, 2015 criminal speeding ticket"; an "April 2, 2016 collision." (*Id*.) Given both parties' omissions, at this time and with the below-noted exceptions, the Court cannot rule on the admissibility or relevance of evidence they seek to preclude or admit.[2]

Defendants seek to introduce other acts evidence which "contradicts Plaintiff's damages claims and impeaches false statements [he] previously made under oath." (*Id*. at 3). The Court notes that in each of Plaintiff's causes of action, he includes claims that "[he] suffered . . . pain, suffering anguish, [and] emotional distress[.]" (Doc. 17 at ¶ 42.) Plaintiff's constitutional claims also allege "pain, suffering, anguish, emotional distress

---

[2] Nonetheless, the Court finds it improbable that exhibits 507 and 517 for traffic tickets and complaints occurring prior to July, 15, 2017, would be probative of any issue to be tried.

- 3 -

and economic losses including hospital, and other medical expenses, and lost earnings[.]" (*See* Doc. 16 at ¶¶ 42, 45, 50, 58).  He further seeks an award of special, general, and punitive damages.  (*Id.* at ¶ 59).  Plaintiff also states that "[he] also received counseling from a mental health therapist for emotional distress." (Doc. 151 at 13).  He lists several witnesses who will testify about his emotional damages, counseling and psychotherapy treatment and diagnosis.[3]  (*Id.* at 25-26).

      Given Plaintiffs allegations and demand for damages, should he introduce testimony or evidence of being fearful of police as a result of the July 15, 2017, incident; that he has a physical and/or emotional reaction to police presence; that he remains fearful of police, and that he does his best to avoid police "to this day;" the Court finds the following evidence probative of his claims and Defendants' defenses:  the October 28, 2017, report that Plaintiff twice encountered law enforcement due to speeding.  (Doc. 167 at 3).  However, without additional details, the Court cannot determine whether the circumstances involved in the speeding incident are more probative than prejudicial (Plaintiff had a passenger with drug paraphernalia in the vehicle and that Plaintiff was protecting himself from prosecution for failure to adhere to a court order) (Doc. 167 at 3).  *See* Fed.R.Evid. 403.  The Court, however, finds that the probative value to Plaintiff's 911 call to report a theft from an escort is substantially outweighed by the dangers of unfair prejudice, will result in jury confusion, and wasted time.  *See* Fed.R.Evid. 403.  Therefore, the Defendants may not seek to introduce evidence of the January 2, 2018, Scottsdale police call or circumstances of it.  Accordingly,

      **IT IS ORDERED granting** in part, Plaintiff's Motion in Limine No. 1 (Doc. 146).  The Motion is granted as to Plaintiff's Exhibits 507 and 517.  It is **denied** as to Plaintiff's Exhibit 520 related to the October 28, 2017, law enforcement encounters.  The Court otherwise reserves its ruling.

/ / /

/ / /

---

[3] Plaintiff's witnesses include Tim McGough and Judith Phillips Wellick, LDSW.  (*Id.*).

**B.     Plaintiff's Motion in Limine No. 2 (Doc. 147); Defendants' Response (Doc. 186)**

Plaintiff next seeks to preclude "all suggestions, testimony, evidence, or argument relating to [his] former high school and collegiate wrestling background" because it is "irrelevant, unduly prejudicial, confusing, and misleading." (Doc. 147 at 1). Defendants contend that Plaintiff put at issue the "size difference between him and the deputies . . . alleging that his smaller size made him a non-threat to the deputies such that Deputy Eversole's use of Shadow was unreasonable under the circumstances." (Doc. 186 at 2).[4] Defendants assert that Plaintiff cannot "[tell] the jury he was physically too small to pose a threat to the larger deputies while hiding from the jury that he was an elite-level wrestler who had the skill and physical strength" to use his training to maneuver his body and to resist arrest. (*Id*. at 3). The Court agrees.

Plaintiff's Complaint suggests that Plaintiff intends to place his physical conduct and size at issue during trial. Therein, Plaintiff states, among other factual assertions that: he "did not physically touch or threaten" Deputy Finney "in any way"; Plaintiff "out of fear and shock, and in self-defense, Plaintiff struck Deputy Finney"; "Plaintiff was sitting passively in the back seat" and "forcibly dragged by his handcuffs out of the vehicle"; "While Plaintiff was agitated and demanded an explanation for his arrest, he offered no resistance to being led into either the building or the holding cell"; "Deputy Jackson outweighed Plaintiff by at least 100 pounds"; "Plaintiff did nothing even remotely suggestive of fighting"; "Plaintiff attempted only to stand up, a non-aggressive movement that lasted only a second"; "Plaintiff was still seated on the bench with Jackson's massive body looming over him"; "Plaintiff was not fighting or resisting."[5] (Doc. 17 at ¶¶ 16, 17, 21, 22, 23, 24, 25, 26). Therefore, Plaintiff's collegiate wrestling training and career are probative relevant evidence should he offer evidence or testimony that he lacked the size

---

[4] Defendants incorrectly cite Doc. 1, Plaintiff's original complaint which was superseded by Doc. 17.

[5] Plaintiff's Battery allegations also assert that the deputies Eversole and Jackson issued false and misleading reports regarding Plaintiffs physical resistance. (*See* Doc. 17 at ¶¶ 30 – 39).

or physical strength to resist the deputies. *See* Fed.R.Evid. 401. The Court finds that the probative value of such evidence is not outweighed by prejudice to the Plaintiff given the allegations in his Complaint. Accordingly,

**IT IS ORDERED denying** Plaintiff's Motion in Limine (Doc. 147).

C. **Plaintiff's Motion in Limine No. 3 (Doc. 148); Defendants' Response (Doc. 168)**

Plaintiff seeks an order precluding the Defendants from introducing at trial "all suggestion, testimony, evidence, or argument relating to any alleged fact unknown to Eversole at the time of use of force relating to the events preceding Plaintiff's arrest" and preclusion of Plaintiff's subsequent "plea, conviction and incarceration" resulting from the Salt River recreational area arrest incident that preceded the holding cell incident. (Doc. 148 at 2). Plaintiff first contends that "defendant Eversole knew almost nothing about those preceding events" and that these events have "nothing to do with the defendants' claimed defenses." (*Id.*) As justification to exclude both categories of evidence, Plaintiff further asserts that "the trial of this matter concerns events removed in time and distance from the events surrounding Plaintiff's arrest[.]" (*Id.* at 3). Defendants counter that Plaintiff puts the events at Salt River recreation incident at issue when he alleges that "Officer Fleming and Deputies Eversole and Jackson approached the vehicle itching for an opportunity to extract vengeance for their injured fellow officer . . . [t]hey were poised to fight as they opened the passenger door[.]" (Doc. 168 at 2; *see also* Doc. 17 at 20). Defendants' further state that they seek to use Plaintiff's conviction for impeachment purposes only, and do not state an intent to introduce evidence of Plaintiff's plea or incarceration at all.

As an initial matter, Plaintiff's allegations appear to be that Defendant Eversole knew that an officer was injured while interacting with Plaintiff, therefore, Defendant Eversole's acts of battery and excessive force were in retaliation for that injury. Defendant Eversole also asserts that he was aware of the incident involving an injured officer at the recreational area, and that Plaintiff caused the injury. At this point, testimony regarding

- 6 -

Defendant Eversole's knowledge of the "preceding events" at the time he interacted with Plaintiff is probative of Plaintiff's claims and are admissible. Plaintiff's counsel is of course free to cross-examine Defendant Eversole about what he did and did not know at the time of the incident. The Court will not, however, attempt to discern or identify what Defendant Eversole knew so that it may broadly limit "all suggestion, testimony, evidence, or argument relating to any alleged fact unknown to" him.

Regarding the admissibility of Plaintiff's resulting conviction for aggravated assault, as Defendant's observe, the conviction may only be used, if at all, as impeachment evidence. (Doc. 168 at 4). To determine its admissibility, the Court must apply the standards set forth in Fed.R.Evid. 609(a)(1)(A) and Fed.R.Evid 403. Rule 609(a)(1)(A) provides that evidence attacking "a witness's character for truthfulness by evidence of a criminal conviction" for a crime punishable by more than one year "must be admitted . . . in a civil case . . . in which the witness is not a defendant" unless its probative value is outweighed by its prejudicial effect in accordance with Rule 403. At this juncture, the Court is unable to determine whether use of the Plaintiff's plea or conviction for impeachment purposes would be more probative to the credibility of Plaintiff than prejudicial to his claims. The Court does find, however, that the plea and conviction are not remote in time as they are related to the Salt River recreational area incident that directly preceded the excessive force claim and will not be excluded on that basis. The Court nevertheless fails to see the probative value of Plaintiff's incarceration, and will exclude evidence of it. Accordingly,

**IT IS ORDERED granting in part**, and **denying in part,** Plaintiff's Motion in Limine (Doc. 148), without prejudice to renew.

**III.   Defendants' Motions in Limine**

    **A.   Defendant's Motion in Limine No. 2 (Doc. 156); Plaintiff's Response (Doc. 163)**

Defendants seek an order precluding Plaintiff from introducing evidence of 1) a Professional Standards Bureau ("PBS") Investigation into the incident that was conducted

and its outcomes; 2) the resulting outcome of the PBS Investigation as it relates to non-party Deputy Jackson; and 3) Defendant Penzone's public statements "about the investigation." (Doc. 156 at 1). Defendants' argue that such evidence will only "inflame the jury's passions, confuse the issues, mislead the jury, and unfairly prejudice Defendants." (*Id*. at 2). Plaintiff responds that the PBS Investigation is relevant to his damages case because "[t]he fact that Eversole was not disciplined by Sheriff Penzone for any misconduct . . . and the fact that he was promoted in rank 'necessarily informs the need for deterrence in the form of punitive damages.'" (Doc. 163 at 3). He asserts that the PBS Investigation also includes statements by deputies Buckley, Eversole, Jackson, Hossack, and Finney that may contradict their deposition and trial testimony, thus, he urges the Court to reserve its ruling. (*Id*. at 2-3). Moreover, Plaintiff claims that Defendants disclosed the PBS investigation late, resulting in an inability to further determine its relevance to his case.

Given Defendants' untimely disclosure, the Court will reserve ruling on whether statements made by the aforementioned witnesses during the course of the PBS investigation may be used for impeachment purposes. *See* Fed.R.Evid 613. The Court will, however, preclude testimony or evidence related to the PBS investigation and outcomes because its probative value is substantially outweighed by a danger of creating jury confusion, misleading the jury, and may result in undue prejudice to Defendants. Fed.R.Evid. 403. The jury will be instructed on the elements of Plaintiff's specific legal claims according to the law. Although neither party addresses what standards the PBS used in reaching its outcomes, the potential for jury confusion due to the introduction of different review standards and definitions is high and justifies exclusion of this evidence. Neither party may introduce testimony or evidence of the PBS investigation or outcomes.

Regarding Defendant Penzone's statements, the Court will not preclude evidence of his statement made during a 2018 press conference addressing this incident in which he said "that using K9s on handcuffed suspects wasn't an abnormal practice." However, Defendant Penzone's statement that "[i]f any details of that case require that I . . . hold

people (deputies) accountable and make changes I will" is precluded because, it is not related to or probative of Plaintiff's specific battery or constitutional claims and like the PBS investigation and outcomes, it will only confuse the jury. (Doc. 151-1 at 37). Accordingly,

**IT IS ORDERED granting** in part, Defendants' Motion in Limine No. 2 (Doc. 156). The Plaintiff is precluded from introducing evidence of the PBS Investigation and outcome. The Court will reserve ruling on whether statements made during the course of the PBS Investigation may be used to impeach the aforementioned witness.[6]

### B. Defendants' Motion in Limine No. 3 (Doc. 160); Plaintiff's Response (Doc. 165)

Finally, Defendants' seek to exclude the Plaintiff from introducing evidence or testimony related to "any other claims, lawsuits, settlements, verdicts, judgments, complaints, administrative investigations or proceedings, and/or other alleged incidents . . . criminal justice reform movement, 'Black Lives Matter' . . . defund the police" or events and media involving law enforcement. (Doc. 160 at 1). Plaintiff asserts that he does not intend to present such evidence and the Court will hold him to that avowal. (Doc. 165 at 1).

Plaintiff, however, states that such issues may arise in voir dire and the Court agrees that it may be appropriate to raise these issues at that time. Moreover, Plaintiff, in making his damages case, may discuss deterring or punishing the Defendant in accord with closing argument protocol. Accordingly,

**IT IS ORDERED granting** Defendants' Motion in Limine No. 3 (Doc. 160).

Dated this 20th day of April, 2021.

Honorable Diane J. Humetewa
United States District Judge

---

[6] Both parties must instruct their witness to refrain from referring to the PBS Investigation.

- 9 -