**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shane McGough, | No. CV-18-01302-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Paul Penzone, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Exclude the testimony of Plaintiff's use-of-force expert, W. Ken Katsaris ("Mr. Katsaris") (Doc. 155). Plaintiff has filed a Response (Doc. 164).[1] The parties have not requested oral argument or a *Daubert*[2] hearing on the Motion to Exclude, and the Court finds resolution of the issues therein are appropriate without one. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

**I.   Background Facts**

The Court has discussed the background facts of this case at length and need not repeat them here. (*See* Doc. 136). As is relevant to Defendants' Motion to Exclude, Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 against Maricopa County

---

[1] In its Order denying Defendants' Motion for Summary Judgment (Doc. 136), the Court also denied, without prejudice to refile, Defendants' first Motion to Exclude Mr. Katsaris (Doc. 95). Given the page restrictions the Court imposed on the parties' motions in limine in its Final Pretrial Order, the Court has reviewed the briefing on Defendants' prior *Daubert* motion (Docs. 95, 101, 110) in reaching its conclusion.

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999).

Sheriff's Deputy and canine ("K-9") handler, Shaun Eversole ("Deputy Eversole") and Sheriff Paul Penzone for his vicarious liability. Under section 1983, liability is established where the defendant has violated the Plaintiff's civil rights under the Fourth Amendment of the United States Constitution by using excessive force against him. *See Graham v. Connor*, 490 U.S. 386 (1989); *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). To succeed on this claim, Plaintiff must show that the force used against him—here, a three-minute K-9 bite to his upper thigh—was objectively unreasonable. Plaintiff retained Mr. Katsaris to provide expert testimony regarding the reasonableness of the force used.

## II. Legal Standards on Admissibility of Expert Witnesses

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert*, 509 U.S. at 589. Under Rule 702, an expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education" if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

## III. Mr. Katsaris' Report

Mr. Katsaris' Report organizes his opinions in twelve separate paragraphs. (Doc. 155-1 at 6-13). Defendants helpfully summarized these opinions in their first Motion to Exclude (Doc. 95 at 3-5), and the Court references those summaries with some modification here. Mr. Katsaris opines:

¶ 1: Statements by law enforcement preceding Plaintiff's transport to the holding cell do not justify the force used against Plaintiff in the holding cell under "any of the standards for any type of use of force as is trained to law enforcement officers under the standards of either U.S. Supreme Court rulings of Graham v. Connor or Kinglsey [sic] v. Hendrickson."

¶ 2: Deputy Jackson's deposition testimony and report about Plaintiff's behavior in the holding cell is incorrect; Deputy Jackson moved Plaintiff to

the holding cell floor in retaliation for Plaintiff's verbal insult to Officer Fleming.

¶ 3: The use of force against Plaintiff was unnecessary under the totality of the circumstances, given that Deputy Jackson was removing Plaintiff's handcuffs and there were multiple officers in the holding cell.

¶ 4: That Plaintiff was able to maneuver the cuffs to the front during transportation is "inconsequential" considering the number of officers that were present, that Plaintiff "was in a cell," and that the "three body-cam videos of the incident" show that Plaintiff is not resistant.

¶ 5: Deputy Eversole's testimony shows that the deployment of the canine was not in response to a perceived threat, and a canine deployment under the circumstances has no legitimate place in the scheme of law enforcement procedure. As a result, the deployment of a bite and hold was "purely an intentional infliction of a high level of pain."

¶ 6: Deputy Eversole's perception of Plaintiff's actions was not reasonable because the body-cam footage shows Plaintiff was not belligerent and aggressive, he was acting reflexively, he attempted to comply with officers' verbal instructions, he "begged" to halt the canine attack, and was "screaming in agony" during the bite and hold.

¶ 7: His review of the body-cam videos shows that deployment of the canine "was obviously inflicting great pain and injury" to Plaintiff, was "unreasonable, unnecessary, and far outside and below the recognized accepted and trained canine deployment policy and procedures," and the duration of the bite was "egregiously unjustified by any law enforcement measure." This opinion stands regardless of any type of police tool used.

¶ 8: Deployment of the canine and "continuation" of deployment, "with multiple officers present, for over three minutes," was contrary to MCSO policies, and Sheriff Paul Penzone's public statement regarding use of force.

¶ 9: All three law enforcement officers submitted misleading "if not outright false" reports about the incident, and when compared to the body-cam footage; their statements regarding Plaintiff's "supposed physical resistance is [sic] untrue at worst, and greatly exaggerated at best."

¶ 10: Deployment of a canine was not justified by Deputy Eversole's perception of Plaintiff's actions when coming off the bench because the bodycam footage is "obvious[ly]" contrary to Deputy Eversole's perception, and he was "totally unaware" of alleged character traits or past incidents involving Plaintiff.

¶ 11: Deputy Eversole's justification for a canine deployment based upon the parking lot altercation is a "flawed thought process" because he was not present when the incident occurred and had been told "minimal information" about the incident.

¶ 12: In sum, (1) the totality of the circumstances in the holding cell were below recognized and accepted procedures; (2) Plaintiff did not resist in the holding cell; (3) the standards in Graham and Kingsley were violated; (4) the use of force was unreasonable, "unnecessary," and "not proportionate"; and (5) the deputies ignored "their training, their policies, and the law and constitution for retribution against [Plaintiff]."

IV. **Analysis**

Defendants seek to exclude Mr. Katsaris from testifying on the grounds that (1) he is not qualified to opine about the use of a police canine; and (2) that his opinions will not assist the jury. (Doc. 155 at 1-2).

    **1.**     **Qualifications**

Defendants first seek to exclude Mr. Katsaris as an expert witness because he "does not have sufficient experience, training, or education to render opinions on the use of force involving a canine." (Doc. 155 at 1). They argue that he "is not a certified canine handler or officer, has published no materials on canine deployment, and has no experience as a

canine officer." (*Id.*) Plaintiff argues that Mr. Katsaris is "eminently" qualified, and points to his more than 50 years of law enforcement experience. (Doc. 164 at 1-2).

Mr. Kataris' report reflects that as a sheriff, he developed policies "for the application of police K-9's for tracking, drug interdiction, as well as for force, following the 'bite and hold' procedures." (Doc. 155-1 at 3-4). He also represents that as a police officer, he worked as a K-9 assisting officer and participated in K-9 training and suspect apprehension. (*Id.* at 4). He has also served as a regional, statewide, and nation trainer on "'Use of Force' seminars for which policy and procedure for K-9 deployment" were his topics, and has taught in the area use of force involving K9s, including jail and prison procedures involving use of K-9s. (*Id.*) Finally, Mr. Katsaris states that he has been qualified as an expert in several federal courts to testify regarding K9 "bite and hold" and "surround and bark" procedures and tools." (*Id.*)

The Court finds that Mr. Katsaris is qualified to testify as an expert on use-of-force involving a canine. Defendants' objection as to his lack of particularized expertise "goes to the weight of the testimony, not its admissibility," and is not a basis for his exclusion. *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993).

### 2. Relevance and Reliability

Although qualified, the Court nonetheless finds that Mr. Katsaris' proffered testimony is inadmissible for the following reasons:

### A. Mr. Katsaris' Opinions Will Not Assist the Jury

As noted above, under Rule 702, expert testimony is relevant only if it assists the trier of fact in understanding the evidence or in determining a fact in issue. *See Daubert I*, 509 U.S. at 591. The Court finds that Mr. Katsaris' opinions are not helpful in this regard: they simply articulate his subjective version of the events at issue and improperly make credibility determinations about witnesses.

Throughout much of his report, Katsaris describes how he perceives the events unfolding on the officers' body-cam videos. (Doc. 155-1 at ¶ 2 (from his viewing of the video it showed Plaintiff was not fighting, contrary to Deputy Jackson's testimony); ¶ 3

(observing that Deputy Jackson is "physically much larger than McGough, had complete control over McGough from the point he pulled him off the bench, took him to the floor of the cell, and throughout the egregious deployment of the K9…"); ¶ 4 (stating Plaintiff "does not offer any physical resistance to the three armed law enforcement officers"); ¶ 5 (stating that at the time canine was deployed it was "completely obvious to me that McGough posed no threat to anyone, nor was he resisting or attempting to escape"); ¶ 6 ("McGough complied, or was attempting to comply with the verbal instructions he was receiving…"); ¶ 7 (during the three-minute bite, "the K-9 was obviously inflicting great pain and injury to McGough, who was dressed only in a swimsuit, which did not provide any protection from the K-9 bites"); ¶ 10 (stating that the body-cam videos show that it is "obvious" Deputy Jackson pulled Plaintiff off the bench but Defendant Eversole testified that Plaintiff "was coming off the bench in an aggressive manner toward Deputy Jackson"); ¶ 12 (Plaintiff "was not actively resisting or attempting to flee, nor was he an immediate risk of threatening harm to the officers of others").

Other conclusions opine on the veracity of witness statements and positions. (*See e.g.*, *id.* at ¶ 9 (stating that "a comparison of the videos to the submitted reports readily shows that the officers statements regarding McGough's supposed physical resistance is untrue at worst, and greatly exaggerated at best"); ¶ 11 (calling Defendant Eversole's justification for the use of force "a flawed thought process" because Eversole was not present when the pre-incident assault occurred). (*See also id.* at ¶¶ 2, 10).

The Court finds that these opinions would not be helpful to jurors in determining the reasonableness of Deputy Eversole's conduct. "[E]xpert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic." 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6265.2 (2d ed., April 2016 update). The videos Mr. Katsaris viewed in reaching his opinions will be made available to the jurors during trial; the jurors can then make their own determination of how events unfolded. Mr. Katsaris' factual narrative, as interpreted

through his own subjective viewing, will not assist the trier of fact to understand or determine a fact in issue. He would instead be acting as an additional juror.

Moreover, whether certain witness are credible or truthful are questions that raise factual issues for the jury to decide. For example, Plaintiff says he offered little to no resistance in the holding cell; Eversole says otherwise. Without specification, Katsaris says "a comparison of the videos to the submitted reports" shows Plaintiff is the credible one in this regard. But expert opinions do "not help [jurors] if [they] simply assume[] crucial facts that are in dispute." *Id.* Whether the jury choses to believe Plaintiff or Eversole on this, and many other crucial facts that are in dispute in this action, will be a decision "for the jury—the jury is the lie detector in the courtroom." *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973). *See also* Christopher B. Mueller, Laird C. Kirkpatrick & Charles H. Rose III, Evidence Practice Under the Rules 739 (4th ed. 2012) ("where the issue and subject are ones that lay jurors can appreciate and evaluate by applying common knowledge and good sense, admitting expert testimony. . . may warrant reversal if it likely to dissuade the jury from exercising independent judgment or to take over the jury's traditional function of appraising the credibility of witnesses"). Katsaris' opinions as to the credibility of the officers is improper and unhelpful.

In sum, the following opinions are excluded because they are unhelpful in assisting the jury: ¶¶ 2, 3, 4, 5, 6, 7, 9, 10, 11.

### B.  Mr. Katsaris Testifies on Ultimate Issues of Law

Other aspects of Mr. Katsaris' testimony will be excluded because they plainly opine as to ultimate issues of law. While expert testimony is not objectionable just because it embraces an ultimate issue, *see* Fed. R. Evid. 704(a), "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis in original) (*citing Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). Opinions, for example, that Deputy Eversole acted unreasonably, or that Plaintiff did not pose a threat or was not under control, are impermissible legal conclusions on ultimate issues of law.

Because paragraphs 1, 7, 8, and 12 of Mr. Katsaris' report contain impermissible legal conclusions, they will be excluded.

### C. Mr. Katsaris' Testimony is Lacking in Reliability

The Court is also concerned about Mr. Katsaris' failure to articulate the policies or industry standards that form the basis for his opinions. The reliability factors from *Daubert I*, such as peer review, publication, and error rate, do not apply to non-scientific expert testimony, because the reliability of this kind of testimony depends on the expert's knowledge and experience more than the expert's methodology or theory. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (*quoting Mukhtar*, 299 F.3d at 1169); *United States v. Hankey*, 203 F.3d 1160, 1169 & n.7 (9th Cir. 2000). "However, the court cannot conclude that a non-scientific expert's proffered testimony is reliable unless the expert explains the manner in which her knowledge and experience support her conclusions." *Johnson v. Kelly*, 2017 WL 1838140, at *4 (W.D. Wash. May 8, 2017) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.").

Expert testimony about police procedures or what a hypothetical reasonable officer might have done, *to the extent this testimony is based on sufficient facts or data*, may be proper expert testimony in use of force cases. *See e.g., Bui v. City and Cty. of San Francisco*, 2018 WL 1057787, at *10 (N.D. Cal. Feb. 27, 2018) ("an expert may address hypothetical situations (such as what a police officer might do in a given situation"). Here, Mr. Katsaris generally references Supreme Court caselaw *Graham* and *Kingsley* and concludes that "[t]he manner of force and the proportionality renders the force excessive and immensely beyond the recognized, accepted and trained law enforcement procedures." (Doc. 155-1 ¶ 1). He further states that "[w]hile the initial K-9 deployment was in and of itself unreasonable, unnecessary, and far outside and below the recognized accepted and trained K-9 deployment policy and procedures anywhere in the USA, the duration of the "Bite and Hold" commands by Eversole was egregiously unjustified by any law

enforcement measure." (*Id.* at ¶ 7). Elsewhere, he conclusively states that it is his opinion that the deployment of the canine and three-minute hold "was contrary to [Maricopa Country Sherriff's Office ("MCSO")] Force Policy, CP-1 (MCSO-00256-261) and Canine Unit Operations Policy, Policy GJ-25 (MCSO 00263-266)." (*Id.* at ¶ 8). But at no point does he state what "the recognized, accepted and trained law enforcement procedures," "the recognized accepted and trained K-9 deployment policy and procedures," or even MCSO's Force Policy, or Canine Unit Operations Policy actual say about the use of force in these situations.

Indeed, absent these general references, Mr. Katsaris' report contains no discussion of policies or procedures or what a hypothetical reasonable officer would have done in Defendant Eversole's position. He simply reiterates that Deputy Eversole's conduct was contrary to recognized and accepted standards and policy. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note to 2000 amendments. "The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." *Id.* As discussed above, each of these conclusions improperly opine on an ultimate issue of law and will be excluded on that basis. But the unreliability of these statements also justifies exclusion of this testimony.

V. **Conclusion**

In sum, Mr. Katsaris' testimony is inadmissible under Rule 702. Accordingly,

**IT IS ORDERED** that Defendants' Motion in Limine No. 1 to Exclude Testimony of W. Ken Katsaris (Doc. 155) is **GRANTED**.

Dated this 22nd day of April, 2021.

Honorable Diane J. Humetewa
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28